## POLLARD v. OKLAHOMA CITY RY. CO.

No. 1525. Opinion Filed November 19, 1912.

(128 Pac. 300.)

**EXPLOSIVES—Personal Injuries—Proximate Cause—Intervening Acts.**
A railway company, in extending its lines, was compelled to use large quantities of blasting powder in the excavation of a cut. A small quantity of powder, from a spoonful to a pint, was by the workmen left in each powder can, which cans were thereafter thrown aside, some on, and some off, the company's right of way. J., a boy past fourteen years of age, residing with his father near the cut, while trespassing on the company's right of way, discovered the small quantities of powder left in the various cast aside powder cans, and by dint of perseverance, covering a period of five or six weeks, removed the same, until he had secured about one-half a canful, which he secreted, first near the railway cut, and later in a can back of his father's house. His father and mother, discovering his possession of the powder, remonstrated with him to leave it alone, but did not take it away from him. The powder had been in the can back of his father's

house for three weeks, when P., a boy of thirteen years of age, came to visit J. They took a quantity of powder in their pockets and went down to a nearby creek, where, placing the powder on the ground, and in attempting to explode it, P. was severely injured by a premature explosion. It was shown that J. knew what powder was, had handled it and exploded it before without injury. In an action by P. against the railway company for damages, **held**, that the action of the railway company in permitting the cans with small quantities of powder therein to be left on its right of way where J. could gather the powder therefrom was not the proximate cause of the injury to P.; nor were the negligent acts of J. or those of his father, or his mother, or of P., such concurrent or contemporaneous acts of negligence as would make the company liable, but that they were the independent acts of intelligent, responsible human beings, of such degree and character as would break the chain of sequence and thereby insulate the company's original negligence to such an extent as would make it the remote and not the proximate cause of the injury.

(Syllabus by Robertson, C.)

*Error from District Court, Oklahoma County;*
*Geo. W. Clark, Judge.*

Action by Bernie Smith Pollard, by his next friend, A. J. Pollard, against the Oklahoma City Railway Company. Judgment for defendant, and plaintiff appeals. Affirmed.

*Giddings & Giddings* and *Moman Prueitt,* for plaintiff in error.

*Shartel, Keaton & Wells,* for defendant in error.

Opinion by ROBERTSON, C. This is an action for damages on account of personal injuries resulting from an explosion of powder. The facts, briefly stated, are as follows: In the early part of the year 1907, the defendant railway company was engaged in extending its lines north from Oklahoma City toward the town of Britton. At a point about one mile south of Britton, within a half mile of a schoolhouse and near Oklahoma City, it was necessary to excavate a cut about 1,500 feet long and from fifteen to twenty feet deep, at the center or deepest place. In making this excavation it was found necessary to use large quantities of blasting powder and dynamite. The powder cans, after being emptied, were carelessly thrown aside by the workmen, some on, and some outside of, the right of way of defend-

ant company. The evidence shows that in each of these cans so thrown aside there remained from "a spoonful to a pint" of black blasting powder. At a distance of between one-fourth and one-half mile from the cut aforesaid was located the home of Mr. Justes, the father of Millard Justes, a boy between the ages of fourteen and fifteen years. Millard Justes, the son, in the course of his boyish ramblings and investigations, discovered the empty and cast aside powder cans, on and near the right of way as above mentioned, and through boyish curiosity also discovered the small amounts of powder contained therein, and proceeded to and did gather, by one means and another, a quantity, estimated at from one-half to three-fourths of a powder can full, at different times, and hid it in a powder can near by, afterwards removing it and again hiding it in a can back of his father's house. He was almost a month in gathering that much powder from the cast aside cans. On the 27th day of April, 1907, Bernie Smith Pollard, thirteen years of age, went with his sister to visit the Justes family at their home near the railway cut as aforesaid. Bernie and Millard, boylike, wandered from the house to a place about one-half mile east and about the same distance from the railroad cut where the Justes boy had obtained the powder, to a creek, for the purpose of fishing. On the way to the creek, they stopped where the powder was hidden back of the Justes house, and took some of it out of the can; the Justes boy taking a pocketful and the Pollard boy a handful, which he likewise put in his pocket. After reaching the creek, they placed some of the powder on the ground and covered it with dirt, leaving each end of the line exposed. The Justes boy sat down by the west end of the line of powder and the Pollard boy at the east end, and both attempted to set fire to the powder; but the Justes boy succeeded in first lighting it. As a result the powder exploded and burned the Pollard boy in a horrible manner, making him a cripple for life. There was evidence to show that the workmen employed in blasting the cut saw Millard Justes and the other boys get the powder out of the cast aside cans, and did not attempt to prevent them from so doing. The work on the extension of the railway was done by the company,

through its contractor, Bennett. It was claimed by both Bennett and the company that he was an independent contractor. Suit for damages in the sum of $50,500 was brought against the railway company alone by the Pollard boy. The company answered by general denial, and also averred that, if the Pollard boy was injured by the explosion as charged in his petition, the same was due to and caused directly by his own negligence, directly contributing thereto. A reply, in form a general denial, was filed, and upon the issues thus formed a trial was had, and at the close of the testimony the court sustained defendant's motion for a peremptory instruction in its behalf, and on this verdict entered a judgment in favor of the defendant, and against plaintiff, on the theory that:

"Bennett was an independent contractor, and if any one was negligent in the construction of this road, and through that negligence the plaintiff in this case suffered injury, the defendant in this case is not liable for that injury. The railroad company having contracted with an independent contractor to do the work, the railroad company is not charged with any negligence which may have appeared from the evidence here to have been chargeable to any other person, and if the railroad company was not negligent in this matter, and was not chargeable with the injury, a verdict in its favor would necessarily have to be returned."

A motion for a new trial was presented and overruled, and plaintiff prosecutes this appeal to reverse said judgment.

Many questions are raised by the petition in error and elaborately discussed by counsel in their briefs; but, after careful consideration of them all, it is apparent that the judgment must be affirmed, not however on the theory that Bennett was an independent contractor, for, clearly he was not, but for the reason that the negligence of the company was not the proximate cause of the injury. If this be true, a discussion of the other questions raised can serve no useful purpose, and their consideration will therefore be deferred until the more important question is disposed of. The facts for the purpose of deciding this issue will stand undisputed. The leaving of the powder cans along the right of way of defendant company in and near the cut referred to in the pleadings and the evidence, even though be-

ing a negligent act on the part of the defendant company, certainly cannot be said to be the primary or proximate cause of plaintiff's injury. Much has been said by counsel for plaintiff in their brief about the doctrine of attractive nuisances; but we fail to see how that doctrine can apply in this case, for the plaintiff was not attracted to the right of way, nor to the powder cans, by reason of any such nuisance. It must be borne in mind that he, at no time, was at or near the defendant's right of way, neither did he see the powder cans scattered along the right of way, nor did he have any part in the gathering of the powder from the various cans into one bulk. The accident occurred at a point far distant from the defendant company's right of way, and the injury could have occurred as easily, and the powder from the various cans into one bulk. The accident any other source. The Justes boy, being past fourteen years of age, and a trespasser on the company's premises, was, judging solely from his testimony as shown by the record, not entitled to the protection of that law which requires owners of premises to use care in keeping the same in safe condition on account of the unreasoning and natural impulses of children of immature years, who may happen to enter thereon either as trespassers or invitees. But even though he were a child of tender years, acting under the unreasoning and natural impulses of childhood, and entitled to the protection of the doctrine of "attractive nuisance," that doctrine could not be invoked in behalf of the plaintiff under the facts of this case.

Millard Justes testified in substance, among other things, that he was past fourteen years of age at the time of the accident; that he discovered the powder in the cast away powder cans along the right of way; that by turning them upside down and shaking them he was enabled to get from a spoonful to a pint out of each can; that he was about five or six weeks in collecting a half can; that he hid it near the Santa Fe track; that he afterwards carried it home, and hid it back of his father's house; that his father and mother both knew he had it and objected to his keeping it there; that it was at his father's house for three weeks before the accident occurred; that his father and

mother had both told him to leave it alone, saying that he would "get his eyes burned out or his face burned up," if he did not; that he knew what powder was; that he had exploded it himself before that time; that he took the powder out of the can (after his father told him he would whip him if he did not let it alone) simply to have some fun; that he "guessed" his father knew what he was doing with it. He explained to the court and jury in his testimony how he had exploded the powder before this time, by digging a hole in the ground with a stick and putting the powder down in the hole, then taking a straw and putting it down on the powder and putting dirt on that and then setting it off with a match. He also testified that he only had about a quart of powder in the can at the house; that the balance of it was hid away near the Santa Fe track. His testimony clearly showed that he was not such an immature child, governed by the unreasoning and natural impulses of childhood, as would render him subject to the protection of the so-called attractive nuisance doctrine.

Plaintiff, of course, was not a trespasser, and the doctrine that the company owed him a duty, in regard to keeping its right of way in safe condition, can have no place in the consideration of this case, for the injury occurred at a place far removed from defendant's premises, and plaintiff, so far as the record in this case shows, was never on defendant's right of way at any time. The leaving of the powder cans on the right of way of defendant company in itself could not therefore have been the proximate cause of the injury complained of, neither was it a concurrent cause, for a concurrent cause is one that acts contemporaneously, or independently, with some other or primary cause, which occasions or results in the injury, and which result or injury would not have occurred had one or the other causes been absent. The entry of the Justes boy on the right of way of the defendant company, either as a trespasser or as an invitee, and the taking of the powder by him, and the carrying of the same away, and the hiding thereof in different places; the knowledge on the part of the parents that he was in possession of the powder, and the scoldings and advice given by

the parents to him concerning the dangerous qualities of the powder; the taking of the powder out of the can from behind the house, where it had been hidden, for more than three weeks, and the carrying of the same in their pockets, by the boys to the creek, and the lighting of the same by the Justes boy—all present to our mind such independent intervening, efficient causes that any of which might well be considered as the real, primary, proximate cause of the injury, and the original negligence of the company in leaving the cans on the right of way, conceding such act to be negligent, is altogether too remote to hold it liable for the injury complained of for the reason, as above stated, that the chain of events is so broken that they become independent, and cannot be said to be the natural and probable consequences of the original or primary negligence.

Had the explosion occurred on the right of way, and the injury to plaintiff resulted therefrom, then the leaving of the cans as described in the pleadings and as shown by the evidence would doubtless have constituted a nuisance and had plaintiff, either by himself, or with others, gathered the powder from the cans, after having been attracted to the right of way by them, or by any other sufficient cause, then the doctrine of attractive nuisance would probably apply, so far as plaintiff was concerned, and the company would have been liable for the resulting damages; but it must not be forgotten that the damages alleged to have been inflicted did not occur under such circumstances, even though the leaving of the cans upon the premises constituted a nuisance. That fact in itself, the maintenance of such nuisance, under the circumstances of this case, would not have been the proximate cause of the injury complained of, and it has been held that the maintenance of a nuisance upon land, by the unlawful storing of explosives thereon, was not the proximate cause of injury to a boy who had entered the premises without permission and carried away the explosives and set them off, thus injuring himself. *Bennett v. Odell Mfg. Co.,* 76 N. H. 180, 80 Atl. 642. However, it is only proper to say that in the above case the plaintiff did not seek a recovery on the theory that he was an infant trespasser, but upon the ground that the company maintained a nui-

·sance on its premises by the keeping of explosives, through the explosion of which plaintiff was injured. As has been seen, this doctrine could not apply to the plaintiff in this case, and of course the company would not be liable to plaintiff for such nuisance, because the injury did not result from the maintenance ·of such a nuisance, and, so far as the plaintiff is concerned, the cans might still be out upon the right of way, and no damages therefrom might ever occur to him by reason thereof. It is a well-settled rule of law that requires each person to use such care for the safety and well-being of others in and about the keeping of his property as an ordinarily prudent person would have used under all the facts and circumstances of the case, and the failure to use such care is negligence, and he who does, or permits, a wrongful act is liable for the consequences which ensue in the ordinary and natural course of events, although such consequences be immediately and directly brought about by inter-vening causes, if such intervening causes were set in motion by the first or original wrongdoer. Hughes, Grounds and Rudiments of Law, vol. 4, p. 913. However, if an independent force or agency intervenes, this will break the causal connection, unless under all the circumstances of the case this intervention itself is a concurrent cause, or is not the primary or proximate cause of the injury, and could not have been anticipated or foreseen. This is axiomatic. Therefore, can it be said that the leaving of the cans and the small quantities of powder therein on the right of way of the defendant company was, in truth, the direct, efficient, and proximate cause of the injury to plaintiff, or was there an intervening cause, sufficient to break the chain of sequence, and thereby insulate the company's negligence from the injury com-plained of to such an extent as will relieve it from liability? This is a question not always easy to determine. The books are full of apparently conflicting decisions, and it is evident that no hard and fast rule can be formulated that will apply to all cases. Each case must depend upon its own peculiar facts and circumstances. But if we can say, after due consideration of the testimony in the record before us, that the negligence of the company, under all the facts and circumstances, was not the proximate cause of

the injury, then certainly the company will be relieved from liability, otherwise it will not.

In 29 Cyc. 499, a rule is stated as follows:

"The mere circumstances that there have intervened between the wrongful cause, and the injurious consequence, acts produced by the volition of animals or persons, does not necessarily make the result so remote that no action can be maintained. The test is not to be found in the number of intervening events, or agencies, but in their character, and in the natural connection between the wrong done, and the injurious consequence, and if such result is attributable to the original negligence, as a result which might reasonably have been foreseen as probable, the liability continues."

Measured by this rule, and it is a favorable standard for the plaintiff, we cannot say that the company's original negligence in leaving the powder cans with small quantities of loose powder therein along its right of way was of such degree or character as to be the proximate cause of the injury inflicted in this case. The conduct of the Justes boy, who was past fourteen years of age and of average intelligence, and who, by dint of youthful curiosity and perseverance, and acting by himself, was, in the course of five or six weeks, enabled to gather from these cast aside cans a quantity of powder estimated at twelve or fifteen pounds, which the workmen were unable to remove from the cans, and the assembling of the various quantities into one bulk and the hiding of it in a can, first in one place, far removed from the company's right of way, and later back to his father's house, and after its having remained there for more than three weeks, with full knowledge on the part of his father and mother of its possession, and after they had warned him of the dangerous and explosive quality of the powder, and from thence to the pocket of the plaintiff, who, in conjunction with the Justes boy, carried it down to the creek, still farther away from the company's right of way, and there placed a portion of it upon the ground and covered it with earth, and where the Justes boy applied a match, which caused the powder to explode and set fire to the clothes of plaintiff and injure him, as alleged in the petition, was without doubt the efficient, independent, interven-

ing acts of responsible human beings, and the proximate cause of the injury complained of.

. It is not enough to say that these powder cans had been lying along the company's right of way for weeks, or that some of the workmen had handed some of the cans to other boys, who happened to be on the right of way. Those facts in themselves prove nothing, nor do they in themselves show that the company was negligent in this particular instance. Had the powder in the cans that were given the boys by the workmen on the right of way caused the injury, or had the injury occurred on the right of way, or had the injured boy carried the powder from the right of way and ignited it himself, a wholly different question would have been presented. We cannot speculate on these conditions, for manifestly such acts had nothing to do with the case under consideration. It is not the policy of the law to look back upon the injury complained of beyond the last efficient cause, and this is especially true when an intelligent and responsible human being has intervened. 29 Cyc. 499, and cases there cited.

In this case both the father and the mother of the Justes boy had known for weeks of the possession of the powder by their son. It was to their home that the plaintiff came to visit. Before that they had cautioned their son, warning him of the dangerous qualities of the powder that he had gathered together and was keeping on their premises. It was their bounden duty to take the powder from him, and it was their duty also to prevent the visiting boy, the plaintiff in this case, from taking the powder from their premises to the creek. Altogether there were several intelligent and responsible human beings intervening between the original negligence of the company and the injury that happened to the plaintiff. The negligence of the father and mother, and the negligence of the Justes boy himself, to say nothing of the negligence of the plaintiff, cannot be considered as concurrent negligence, so as to transform the remote into the proximate cause of the injury or to create or increase the liability of the defendant company in the premises. All these facts and circumstances show conclusively such independent, in-

tervening, efficient causes as to compel us to say that they in fact were the proximate cause of the injury, and that the original negligence of the company was so remote and the chain of events was so broken that they became independent, and were not the natural or probable consequences of the original or primary cause.

We have examined, with care, every case cited in the brief of plaintiff in error, and while, in a general way, they are persuasive, as to the doctrines contended for by plaintiff, yet a careful examination shows that they are based on facts wholly different from those in the case at bar. Thus, in *Olson v. Gill Home Inv. Co.,* 58 Wash. 151, 154, 108 Pac. 140, 141, 27 L. R. A. (N. S.) 884, 888, perhaps the strongest case to be found supporting plaintiff's contentions, the facts show that "appellants were guilty of the *grossest negligence* in storing the dynamite as they did, concededly in violation of a city ordinance, and in leaving a door unlocked in a locality where they knew the boys frequently went, whether as trespassers or otherwise." The court, further on in the opinion, says:

"The evidence rather indicates that the dynamite was unlawfully stored and left for an indefinite time in an unlocked vacant structure, where appellants must have known the children were liable to be, either as trespassers or otherwise. * * * Here the appellants, having no apparent use for the dynamite, and knowing of the trespassing proclivities of the boys, *needlessly stored it* (italics ours), a most dangerous agency, where, in the exercise of ordinary prudence, they should have anticipated the trespassing boys would readily find, be attracted by, and take it."

It will be observed that there is a vast difference between the facts in the above case and those in the case at bar. In the instant case the small amount of powder left in each can in itself was not such a dangerous instrumentality as the several sticks of dynamite, with caps attached, neither would it have been (if unmolested by others) the proximate cause of plaintiff's injury. In the Olson case there was no necessity for the presence of the dynamite at the place where it was found by the boys, and appellant was not using it in the prosecution of its work; while in the case at bar the evidence shows that the use of the powder

was absolutely necessary, nor does it appear that more was stored on the premises, or used, than was required to properly carry on the work. Again, in the Olson case, it appears that the dynamite was permanently stored, contrary to the ordinances of the city, in an unlocked building, which the boys and the public generally were accustomed to use and in a populous city and within three blocks of a school, and that the lot, upon which the building stood, was commonly used by the school children as a playground. It is not clear from the statement of facts in the Olson case, whether the Olson boy took the dynamite, or whether it was given him by the other boys, or whether they were all together when it was taken, or whether it was taken all at one time or at different times. However, it does appear that the Olson boy ignited the fuse, and, on its failure to explode the dynamite, attempted to remove the cap with a stick, which latter act produced the explosion. Thus it is seen that, while the Olson case at first blush might be considered as a precedent to be followed in this case, a careful comparison of the facts of the two cases discloses such a dissimilarly as to render it worthless as an authority in support of plaintiff's claims.

In the case of *Harriman v. Pittsburgh Ry. Co.*, 45 Ohio St. 11, 12 N. E. 451, 4 Am. St. Rep. 507, it appears that an employee needlessly left an unexploded torpedo on its track, where the public generally was accustomed to pass, and that Brown, a child of nine, found it, and, not knowing what it was, nor appreciating its dangerous character, carried it into a crowd of children, and by some means exploded it, injuring plaintiff. It is thus seen at a glance that there is no similarity between the facts of that case and the case at bar, and while it is one of the best reasoned and most instructive cases to be found in the books on the questions of attractive nuisance, trespassing children, and proximate cause, yet, for the reason aforesaid, it is of no value to us in the determination of the issue presented in the record before us. All the cases cited, by both parties, state correctly the general rules covering the question of proximate cause, the difficulty, however, being that in no two cases are the facts identical, and for that reason these decisions are valuable only as stating the general

rules on the subject. A review of all these cases here would serve no useful purpose, as was well said in *Mize v. Rocky Mt. Bell Tel Co.*, 38 Mont. 521, 100 Pac. 971, 129 Am. St. Rep. 659, 16 Ann. Cas. 1189:

"There is not any substantial conflict in the authorities upon the general rules of law applicable in negligence cases, and we might select cases from the briefs of appellants or respondent in support of the principles which we announce, with one or two possible exceptions. The difficulty which the courts generally experience is not in ascertaining the rules of law, but in applying them to the facts of particular cases."

Suppose Mr. Justes had purchased the powder from some merchant, and Millard, his son, had taken it, and the accident happened just as it did. Would there be any one to say that the merchant from whom the powder was secured would be liable in damages, even though he had been negligent in the keeping of the same before Mr. Justes came into its possession? And if the company in this case could be held liable, even though two or three responsible human beings had intervened between the act of original negligence and the injury, would there be any limit as to the number of such persons intervening? Surely not.

Having determined that the acts of Millard Justes, his father and mother, and those of plaintiff himself, were not concurring acts of negligence with the original negligent act of defendant company, but were in fact independent, efficient causes, sufficient to break the chain of sequence and thereby render the original act of negligence, not the proximate, but the remote, cause, it therefore necessarily follows that the company is not liable to plaintiff for the injury complained of. This being true, the other questions, such as attractive nuisance, independent contractor, and the like, as raised by the petition in error, will receive no further consideration at our hands, as no useful purpose would be served thereby.

It may be suggested that the questions, decided herein, are primarily issues of fact for the determination of the jury. As a general proposition this is true; but where, as in this case, the facts stand admitted, no issue would be presented to a jury, and, even though a verdict had been returned, there would be a total

lack of proof upon which to base the same, and this court could not permit the same to stand.

It therefore follows that the judgment of the district court of Oklahoma county was correct, and should be affirmed.

By the Court:  It is so ordered.