## LARS M. PETERSON v. WILLIAM A. MARTIN.[1]

October 26, 1917.

No. 20,527.

**Explosive — liability of lessor for injury to child of lessee.**

1. Leaving a small box of dynamite caps in a granary on a plate which is 9 feet and 10 inches from the floor, is not of itself such negligence as will render the lessor liable for injury to the lessee's child, who is injured while playing with the caps.

**Same — proximate cause of injury — question for jury.**

2. Where, subsequent to the original negligent act, a new and independent cause has intervened, of itself sufficient to stand as the cause of the injury, such facts will be considered the proximate cause of the injury, and the original negligence too remote; but where there is a conflict in the testimony as to the facts constituting the intervening cause, the question is for the jury.

**Same — negligence of parent imputed to child.**

3. Acquiesence by a parent in the use by his child of explosives which he has found where they had been negligently left by a stranger, destroy's the latter's responsibility for injury to the child, caused by the explosives.

Action in the district court for Murray county by the father and natural guardian of Lyman Peterson, a minor, to recover $15,200 for injuries sustained by the minor through the explosion of dynamite caps stored in defendant's granary. The answer alleged that the explosives were under the exclusive control of plaintiff, he had them to use about certain work to be done by him, and that he was careless in allowing his

[1]Reported in 164 N. W. 813.

child to get possession of them, who knowing they were dangerous caused them to explode. The case was tried before Nelson, J., who at the close of the testimony denied defendant's motion for a directed verdict, and a jury which returned a verdict for $10,000. Defendant's motion for a new trial was granted unless plaintiff consented to a reduction of the verdict to $5,000. From the judgment entered pursuant to the reduced verdict, defendant appealed. Reversed and new trial granted.

*Paul J. Thompson, M. A. Hessian* and *M. J. Harrington,* for appellant.
*O. J. Finstad,* for respondent.

QUINN, J.

Action by Lars M. Peterson for injury to his minor child, resulting from the explosion of a dynamite cap. Plaintiff had a verdict of $10,000 for the benefit of the child. Upon motion the trial court granted a new trial, unless plaintiff remit the sum of $5,000 therefrom, in which event a new trial was denied. Plaintiff filed his consent to the reduction and defendant appealed.

The defendant owned a farm of 80 acres in Murray county. Prior to March 1, 1916, in clearing the same, he used dynamite caps to blast stumps. He had a few caps left in a small box, which he placed and left upon the plate over the north wall in the granary on the premises. This plate was 9 feet and 10 inches from the floor. The studdings were 16 inches apart. There was a board partition 3 feet and 10 inches high extending north and south across the granary, the north end of which was nailed to the west side of the studding immediately east of where the caps were. It was 6 feet from the top of this partition to the top of the plate. Two feet below the plate was a girder or brace on the studding. East of the partition, between the two studdings next to it and 4 feet and 5 inches below the plate, was a cross piece which is referred to as Number 5. Upon the trial plaintiff testified that, aside from the above, there was a cross piece on the studding about 2 feet above the partition, and immediately above this cross piece was a short board nailed onto the side of the studding, extending out about 8 inches, used for hanging articles on.

The plaintiff contends that, on March 1, 1916, when he moved upon the premises with his family, under a lease from the defendant, and took

possession of the granary, it was in the condition above stated. Plaintiff concedes that shortly thereafter he fastened his tool chest upon the north wall of the granary over the cross piece referred to as Number 5, from the top of which the boy might reach the caps, and that during the month of April or May following the defendant told him about the caps being on the plate, and that he saw them there and that he remained in possession of the granary until after the accident. The plaintiff testified that his family consisted of his wife and two children, Lyman, seven years of age, and a younger brother; that Lyman was in good health, very active, a good climber and a great fellow to examine everything he could get hold of, and that he played about the premises and often went into the granary. It appears that the boy went into the granary two or three days before the accident, climbed up and took some of the caps from the box and put them in his pocket; that he afterward showed one of them to his mother, and that the mother examined it and apparently not knowing the character of the cap handed it back to the boy. But she testified that she told the plaintiff that the boy had it. The witness Leibfried was plaintiff's hired man, and he testified that at noon on August 2, the day of the accident, while he was watering his horse, the boy was near the well; that he had one of the caps blowing into it; that witness asked the boy to give him the cap or he might blow his head off, and that the boy replied that his mother had blown into it and had given it back to him, and that he could do as he pleased with it; that witness then attempted to take the cap from the boy, but he ran away; that the father of the boy stood within 12 feet of witness during this talk and, it seemed, ought to have heard what was said. It further appears that, during the afternoon of that day, the boy went to the hired man's room, secretly took three matches and went to the barn. While holding one of the caps in his left hand, he lit and applied one of the matches to it, thereby causing it to explode, tearing his thumb and three fingers from his left hand and destroying the sight of his right eye.

The defendant contended upon the trial, and there was testimony offered to the effect, that there were no cross pieces upon the studding above the partition at the time he turned the premises over to plaintiff, and that if there were any such at the time the boy procured the caps, they must have been placed there after the plaintiff went into possession

of the granary. He also claimed that he turned the dynamite and caps over to plaintiff for blasting operations, and expressly informed him of the presence and location of the same in the granary.

It may be said that the placing of a box of such caps upon a plate 9 feet and 10 inches above the floor in a granary would not in itself constitute a negligent act; but if, at the time of so placing the caps, there were steps or other means by which a boy of immature years might reach them, quite a different question might arise. If, as claimed, defendant turned the dynamite and caps over to plaintiff for use in blasting opera- ' tions, or if plaintiff was expressly informed of the presence and the location of the same in the granary, and he thereafter placed cleats upon the wall of the granary, thereby making the caps readily accessible to the boy, such act on his part would, in our opinion, constitute an independent, intervening cause which might well be considered the proximate cause of the injury, even though defendant were negligent in the first instance. Finkbeiner v. Solomon, 225 Pa. St. 333, 74 Atl. 170, 24 L.R.A.(N.S.) 1257; Pollard v. Oklahoma City R. Co. 36 Okla. 96, 128 Pac. 300, Ann. Cas. 1915A, 140. We are of the opinion that this phase of the case, and the testimony bearing thereon, should have been submitted to the jury under proper instructions. The court, however, said to the jury at the conclusion of the charge: "There was one question I intended to have called your attention to and that is the claim that the defendant had turned this dynamite and dynamite caps over to Lyman Peterson's father: I charge you upon that point that there is no evidence here that Lars Peterson, the nominal plaintiff here, accepted that, so that you are not to consider that as a defense at all." This was error for which a new trial must be granted.

In the event of a new trial, it may be said that it is a well settled rule that if, subsequent to the original negligent act, a new cause has intervened, of itself sufficient to stand as the cause of the injury, the original negligence is too remote. In this case the mother testified that Lyman brought a cap and showed it to her; that she examined it and gave it back to him; that she did not know what it was, but thought it was some kind of an empty shell, and that she afterward told the plaintiff about the boy's having the same. This testimony, taken in connection with the testimony of the hired man about his conversation with the boy at the well

and about the father's standing within possible hearing thereof, made a question for the jury as to whether the father knew of the boy's having the cap in his possession. If, as a matter of fact, the father knew of the explosive character of the caps and that the boy had them in his possession, it was the father's bounden duty to take them from the child, and, failing so to do, the father's course of conduct would break the connection between the original negligent act of the appellant and the injury to the boy. It would establish a new and independent cause, and the possession of the cap by the child would thereafter be attributable to the permission of his father and wholly independent of the original negligence charged to appellant. Pittsburg Reduction Co. v. Horton, 87 Ark. 576, 113 S. W. 647, 18 L.R.A.(N.S.) 905, and cases cited.

Reversed and a new trial granted.