[Civ. No. 6130. Fourth Dist. Sept. 21, 1959.]

ROBERT LARRY HENDRIKSEN, a Minor, etc., Respondent, v. THE YOUNG MEN'S CHRISTIAN ASSOCIATION OF SAN DIEGO, CALIFORNIA (a Corporation), Appellant.

Luce, Forward, Kunzel & Scripps and Arvin H. Brown, Jr., for Appellant.

Robert C. Thaxton for Respondent.

GRIFFIN, P. J. — Plaintiff, Robert Larry Hendriksen (hereinafter referred to as plaintiff) aged 12 years, 8 months, brought this action for damages, through his guardian *ad litem* Jane Hendriksen, against the Young Men's Christian Association of San Diego, a corporation (hereinafter referred to as Y. M. C. A.) et al., alleging that on August 24, 1953, the said Y. M. C. A. was the owner, had control of, and was engaged in the operation of a recreation and pleasure camp for boys (Camp Marston), and extended to the public an invitation for them to attend it at a charge; that plaintiff accepted, paid the required fee, and while a guest at said camp, near the room assigned to him, he was struck in the left eye with a dart negligently thrown by another paying guest, defendant Jack Ridout (aged 10 years), resulting in the loss of sight of his left eye. It is further alleged that said guest had been negligently furnished with said dart through the negligence of unnamed defendants, sued as Does in said complaint, while acting in the course of their employment as agents of the Y. M. C. A. Appellant and other defendants, including Jack Ridout, answered, denied generally these allegations, and alleged contributory negligence. (See *Hendrik-*

*sen* v. *Y. M. C. A.,* 152 Cal.App.2d 219 [313 P.2d 54], for further details and a more elaborate factual background of the evidence there produced.) After affirming the order granting a new trial, such new trial resulted in a 9 to 3 verdict against appellant Y. M. C. A. for $13,500, and judgment for defendant Howard A. Christman. Its motion for judgment notwithstanding the verdict was denied; likewise a motion for a new trial. It appealed from the judgment and from the order denying its motion for judgment notwithstanding the verdict.

As appears from the record, plaintiff originally brought this action against the appellant Y. M. C. A., Does 1 to 5, and James Roe, as agents and employees of Y. M. C. A. Jack Ridout, sued as James Roe, appeared, admitted he threw the dart, denied negligence, and alleged contributory negligence of the plaintiff and assumption of risk. Defendants Charles L. Crumly and Howard A. Christman, sued as Does 4 and 5, answered, admitted they were the agents and servants of the Y M. C. A. and denied generally that it was by any act or omission of any agent of said Y. M. C. A. that plaintiff was injured, and alleged that plaintiff's injury was occasioned by a violation of orders of said agents; that plaintiff engaged in playing with darts, and any injury sustained by him was contributed to and caused by such violations.

By an amended complaint it was alleged that Ernest Roberson, Charles Crumly, Howard Christman, Jack Ridout and Doe 5, were agents and servants of defendant Y. M. C. A. and it was by reason of the fact that Jack Ridout had been negligently furnised with and had obtained said dart, and the negligent conduct of said defendants, that plaintiff was injured.

On the evidence thus produced the jury found against appellant Y. M. C. A., Crumly, and Christman in the sum of $30,000, and in favor of defendant Jack Ridout. Judgment was entered accordingly. The trial court granted a new trial as to appellant Y. M. C. A., Crumly and Christman on July 26, 1956, which order was affirmed on appeal on July 22, 1958, in the case above cited. A second amended complaint was then filed, alleging in one cause of action that defendant Crumly, General Secretary of the corporation, and Christman, Camp Director, were officers and employees of appellant Y. M. C. A.; that plaintiff was assigned to cabin 13 under the supervision and charge of defendant Roberson, a minor, leader and counsellor placed in charge by defendant Christ-

man; and that the Y. M. C. A., Christman and Crumly neglected and failed to place competent counsellors and leaders in charge of that cabin, and transporting paying guests to said camp. In a second cause of action it is alleged that while at and near the building and room assigned to plaintiff as his sleeping and living quarters, he was struck in the left eye with great force and violence by a dart thrown without due caution and circumspection by Jack Ridout, injuring plaintiff in the manner described; that Ridout had been carelessly and negligently furnished with and had obtained and had come into the possession of, and was allowed to have, and at said time had said dart, through the carelessness and negligence of appellant Y. M. C. A., and that of defendants Crumly, Christman and other agents, while acting in the course and scope of their employment as agents, servants and employees of the Y. M. C. A.; that as a direct and proximate result of said negligence of said defendants, plaintiff was gravely and seriously injured. A judgment of nonsuit was granted as to all defendants on the first cause of action alleging negligent employment and selection of employees, etc., but such motion was denied as to the second cause of action.

On the evidence and pleadings as thus amended, the jury returned a verdict against appellant Y. M. C. A. for $13,500 and found in favor of defendant Christman. Prior to trial the action against the other defendants was dismissed on motion, by reason of prior judgment in favor of Roberson and Ridout and the death of defendant Crumly. The motion as to Crumly had some form of limitation as to its effect, i.e., that the "effect of the dismissal is only as to Crumly, and will have no effect in and of itself upon any other defendant in this action." Thus, the boy who threw the dart, Ridout, the cabin counsellor Roberson, who was immediately responsible for cabin 13, and the camp director Christman, with overall supervision of Camp Marston, have been found to be free of negligence, and only the corporate defendant Y. M. C. A. has been held liable. From that judgment, and from an order denying appellant Y. M. C. A.'s motion for judgment notwithstanding the verdict defendant takes this appeal.

It is now argued that the Y. M. C. A. is responsible for plaintiff's injury only secondarily and derivatively under the doctrine of *respondeat superior*. and since all persons who could have been primarily responsible have been exonerated, there is no fault which can be imputed to the Y. M. C. A.;

that the verdict against it is improper and cannot stand and the judgment for the defendant notwithstanding the verdict was required. (Citing Civ. Code, §§ 2338-2339; *Bradley* v. *Rosenthal*, 154 Cal. 420 [97 P. 875, 129 Am.St.Rep. 171]; *Davison* v. *Diamond Match Co.*, 10 Cal.App.2d 218 [51 P.2d 452]; *Tolley* v. *Engert*, 71 Cal.App. 439 [235 P. 651]; *Fimple* v. *Southern Pacific Co.*, 38 Cal.App. 727 [177 P. 871]; *Doremus* v. *Root*, 23 Wash. 710 [63 P. 572, 54 L.R.A. 649]); that plaintiff, in his second amended complaint clearly indicated he was proceeding against the Y. M. C. A. only on the theory of *respondeat superior*, because, in every instance that the Y. M. C. A. was alleged to have been negligent, the names of Christman, Crumly, and sometimes others are conjoined, and such persons are always described as agents and employees of the Y. M. C. A. who are acting within the course and scope of their employment and nowhere was there any allegation charging the Y. M. C. A. with direct, primary, or joint responsibility. Under section 2338 of the Civil Code:

"Unless required by or under the authority of law to employ that particular agent, a principal is responsible to third persons for the negligence of his agent in the transaction of the business of the agency, including wrongful acts committed by such agent in and as a part of the transaction of such business, and for his willful omission to fulfill the obligations of the principal."

Section 2339 provides: "A principal is responsible for no other wrongs committed by his agent than those mentioned in the last section, unless he has authorized or ratified them, even though they are committed while the agent is engaged in his service."

It is difficult to determine from the second cause of action set forth in plaintiff's second amended complaint, upon which this action went to trial, whether or not appellant Y. M. C. A.'s liability was founded upon the doctrine of *respondeat superior* for a recovery or upon a claim of primary negligence of defendant corporation. It might well appear therefrom that plaintiff was relying upon the alleged negligent acts of the agents or employees of appellant corporation Y. M. C. A. because it is stated that the named agents, employees and others of the Y. M. C. A. did the acts and made the omissions referred to, and in so doing they were acting in the course of their employment. ■ If so, plaintiff would be brought under the recognized rule that the liability of a principal for

torts committed by his agent without specific authority is secondary, whereas the liability of the agent is primary; that while both principal and agent may be sued in a single action, a verdict exonerating the agent is a declaration that the agent has done no wrong and necessarily exonerates the principal, since the principal cannot be held liable under the doctrine of *respondeat superior* if the agent has committed no tort; that consequently, where the recovery sought is based upon an agent's act or omission not directed or participated in by his principal, that is, where the principal's responsibility is simply that cast upon him by law by reason of his relation to his agent, a judgment in favor of and exonerating the agent relieves the principal of responsibility and he may avail himself of it for that purpose; that a verdict against the principal alone is not void where the defendant agent is not mentioned therein, since it does not exonerate the agent, but is merely silent as to him; that a judgment exonerating the agent does not relieve the principal of responsibility where the latter is primarily liable, as where his own negligence is the proximate cause of the injury, or where a statute makes him primarily liable. (2 Cal.Jur.2d pp. 853-854, § 158.)

The important question is whether any claimed negligence of appellant Y. M. C. A. was the proximate cause of plaintiff's injury and whether it was primarily liable under the evidence produced.

Plaintiff's testimony shows the chartered bus, supervised by two counsellors, aged about 19 or 20 years, and selected by appellant's agent Christman, stopped en route at Ramona so that the boys could go to the rest room; that some of the boys made purchases at the local store and plaintiff bought the dart here involved without the knowledge of the counsellor. He testified he and one other boy bought one to throw at frogs at the camp; that when he got on the bus one counsellor noticed his dart and warned the boys not to start shooting bean shooters which were also purchased on that occasion because he did not want to pick up the beans, and said: "Don't throw darts . . . at trees"; that he then put the dart in his pocket but it stuck his leg so he held it in his hand until he got to camp; that he was assigned to cabin 13 and placed under the supervision of Roberson, counsellor for that cabin. (Apparently the two counsellors on the bus had no further connection with plaintiff.) He then testified that when Roberson discovered he had a dart he told plaintiff to "keep it with your things" and when he later saw plaintiff

playing with it in the cabin that afternoon, he took it away from him and stuck it way up on the rafters above Roberson's bunk and told everyone present not to take it down; that if they wanted to use it they could do so at a specified time; that it remained there all day and all night and on the afternoon of the second day he left the cabin for a few minutes after their siesta hour and after lunch, and when he returned he opened the door and was hit in the eye by the dart thrown by Ridout. On cross-examination he testified that the bus counsellor also told him not to throw the dart at any time because it might hurt somebody, but it was "O. K. to have it on the bus"; that later Roberson told him a dart "was dangerous . . . anything is dangerous." He then said he had a dart at home but his mother took it away from him and burned it after this affair; that he knew darts were dangerous and Roberson told everybody in the cabin to leave it alone. Plaintiff then testified he saw the dart stuck in the rafter the second afternoon; that he did not take it down but he saw "kids tossing it around" in the cabin and that he also participated; that while Roberson was away from the cabin they all thought up a game to play called "Daredevil." It consisted of one boy outside of the cabin holding the door shut; another inside throwing the dart, and the dart thrower would continue to throw the dart, trying to hit the door before the attendant at the door could open it; that he did try to open the door once when the dart was thrown but he did not throw the dart; that they previously had a "cabin war" with acorns; that he knew the dart game was dangerous and he had a part in thinking up the idea. He was shown his previous testimony where he stated he was "pretty sure I was" the one to "take the dart down" from the rafter.

Roberson testified generally he was cabin leader of cabin 13; that when he first saw the dart that day it was being thrown around by plaintiff; that he took it away from him and put it in the rafter above his bunk and told all the boys it was very dangerous and all, including plaintiff, promised on their word they would leave it alone; that he thought this was the best thing to do because it placed them on their honor and he took the boys at their word; that he was not present in the cabin for approximately two hours during siesta period and relaxing period because he was at the archery field preparing for activities which the boys were expected to attend if they so desired; that they had been previously released to go to other activities and he was not supposed to

go with them; that they were shown all activities at the camp the first day and they could go to any of them; and that it was during the rest period that the accident happened.

Christman testified he was camp commander in charge; that he first learned of the injury shortly after it happened; that he orally instructed Roberson on the rules of the camp (health and safety), and posted instructions as to activities and the times they would take place; that he (Christman) had charge of transportation of the boys; that he thoroughly instructed the two counsellors about boys putting their arms out of the windows and other safety rules; that they never had a case where a boy brought a dart aboard the bus; that these counsellors were competent, careful and used their best judgment; that the camp had 15 cabin leaders and one was assigned to each cabin; that no dart throwing had ever been encountered before; that firearms were permitted on the bus as part of the guests' equipment on prearranged application; that when such equipment reached the camp it was placed in charge of another, with the boy's name on it, and target practice under supervision, was allowed; that the guns were returned to the boys when they left, and kept in their personal belongings on the bus. He then testified he had 25 years' experience in operating such camps and this camp was operated in the same manner as other camps they operated; that in making the rules it was the custom not to have too many "don't's" or "negatives" but an honor system was to be preferred.

Jack Ridout, who threw the dart, testified that while on the bus he heard the counsellor tell the boys to put darts away and not to use them and all the boys agreed to do so. He corroborated the testimony of many other witnesses that plaintiff took the dart from the rafter, instigated the game described as "Daredevil" and plaintiff was the first to play it; that plaintiff opened the door three or four times when he was trying to miss it, and plaintiff was struck in the eye with the dart. He also testified, as others did, that plaintiff never left the cabin and was participating in the game when he was injured.

The deposition of defendant Crumly, general secretary, read into evidence, was to the effect he had been such secretary for 13 years; that it was his duty to select camp director and he did select Christman, a competent director; that rules of health and safety were printed each year; that he had no part in the selection of counsellors or leaders but left that

to Christman; that 24 hours of constant supervision of boys was impossible, and the safety of the boys in their transportation was left to the camp director.

By the jury's verdict in favor of defendant Christman and the entry of judgment of nonsuit on the first cause of action set forth in the second amended complaint, which judgments have become final, it was determined that there was no negligence on the part of Christman, either in lack of selection of employees or agents, or in supervision of the camp and of plaintiff, at the time of the injury. Accordingly, no judgment against appellant corporation Y. M. C. A. could be imputed to appellant Y. M. C. A. in this respect, by such evidence. (*Fimple* v. *Southern Pac. Co.*, 38 Cal.App. 727 [177 P. 871]; *Davison* v. *Diamond Match Co.*, 10 Cal.App.2d 218 [51 P.2d 452]; *Spruce* v. *Wellman*, 98 Cal.App.2d 158 [219 P.2d 472].)

There was no substantial testimony that Crumly, general secretary, and defendant in the action, prior to its dismissal as to him by reason of his death, was an incompetent employee or that any act of his constituted negligence which could, under any reasonable hypothesis, be imputed to appellant Y. M. C. A. In fact the action of the trial court upon entering the judgment of nonsuit on the first cause of action of the second amended complaint sufficiently disposed of these questions.

The only other claimed agents of appellant Y. M. C. A. who had any participation in said actions, who were not named party defendants and exonerated of any negligence on their part, which could have been imputed to appellant Y. M. C. A. were the two 19 or 20-year-old counsellors who had charge of the boy guests on the bus during the trip to camp. The evidence indicates they were competent employees and the judgment of nonsuit was conclusive on this question. The only other act of claimed negligence on their part was improper supervision. Plaintiff argues that these counsellors had knowledge that he purchased and had possession of the dangerous dart, and it was their duty to prevent it from being purchased and to take it away from plaintiff at that time and place it in a safe place, and that appellant Y. M. C. A. negligently failed to properly instruct said counsellors and agents in the performance of their duties in exercising supervision over plaintiff; that the negligence of appellant Y. M. C. A. was continuous and such failure of duty was the proximate cause of plaintiff's injuries, citing *Warner* v. *Santa*

774

*Catalina Island Co.*, 44 Cal.2d 310 [282 P.2d 12]; *Ferroggiaro* v. *Bowline*, 153 Cal.App.2d 759 [315 P.2d 446]; and *Mosley* v. *Arden Farms Co.*, 26 Cal.2d 213 [157 P.2d 372, 158 A.L.R. 872].

It does appear that these two counsellors took reasonable precautions to inform plaintiff of the danger of a dart after its discovery in plaintiff's possession. Paying guests were allowed to take firearms with them on the bus with their personal belongings. They were not using them on the bus, and although dangerous when improperly used, there was no necessity for these counsellors to believe that they would be improperly used when the boys reached the camp. So it may be said of this dart or a pocket knife or bean shooter which the boys may have carried with them en route. At least these two counsellors on the bus could not be chargeable with knowledge that after arriving at the camp and being turned over to other counsellors, who did in fact take the dart away from plaintiff, that some third person, one day later, would obtain it in the manner indicated, and throw it in plaintiff's eye. We are convinced that this evidence of claimed negligence on the bus could not reasonably be said to be the actual and proximate cause of plaintiff's injury but rather that such proximate causation began with the removal of the dart from the rafter and progressed directly and without interruption to the resulting injury. The negligence of appellant Y. M. C. A.'s agents at the camp has been adversely determined against plaintiff's claim. The relationship of any negligence on the part of any counsellor on the bus to the plaintiff's injury is well covered by a quotation from the case of *Royal Insurance Co.* v. *Mazzei*, 50 Cal.App.2d 549 [123 P.2d 586], where the court adopted as the governing rule a statement from 45 Corpus Juris, page 931, section 491 (referred to in *Hauser* v. *Pacific Gas & Elec. Co.*, 133 Cal. App. 222 [23 P.2d 1088]):

" 'A prior and remote cause cannot be made the basis of an action if such remote cause did nothing more than furnish the condition or give rise to the occasion by which the injury was made possible, if there intervened between such prior or remote cause and the injury a distinct, successive, unrelated, and efficient cause of the injury, even though such injury would not have happened but for such condition or occasion. If no danger existed in the condition except because of the independent cause, such condition was not the proximate cause. And if an independent negligent act or defective

condition sets into operation the circumstances which result in injury because of the prior defective condition, such subsequent act or condition is the proximate cause.' "

■ Because of the remoteness of conduct of the counsellors on the bus to the fact of injury, and on the basis of the nature of the intervening cause, we conclude that the circumstances are sufficiently strong to support the conclusion that, as a matter of law, there is no proximate cause between the conduct of the counsellors and the injury received by plaintiff, particularly where the subsequent agents have been exonerated from negligence in respect to the subsequent events. (*Stultz* v. *Benson Lumber Co.*, 6 Cal.2d 688 [59 P.2d 100] ; *Catlin* v. *Union Oil Co.*, 31 Cal.App. 597 [161 P. 29] ; *Loftus* v. *Dehail*, 133 Cal. 214 [65 P. 379] ; *Bradley* v. *Thompson*, 65 Cal.App. 226 [223 P. 572] ; *Frace* v. *Long Beach City H. S. Dist.*, 58 Cal.App.2d 566 [137 P.2d 60] ; *Peterson* v. *Martin*, 138 Minn. 195 [164 N.W. 813] ; *Pollard* v. *Oklahoma City Ry. Co.*, 36 Okla. 96 [128 P. 300, 303, Ann.Cas. 1915A 140] ; *Roberts* v. *Southern Pacific Co.*, 54 Cal.App. 315 [201 P. 958].)

■ Next, appellant claims error in the refusal of the court to give its proffered instructions on the doctrine of assumption of risk. Although this claimed defense was pleaded by one of the agents, appellant Y. M. C. A.'s answer did not specifically plead such special defense but did allege that defendants were not negligent; that plaintiff was contributorily negligent, and that plaintiff's injury was due to his own fault.

■ In *Covely* v. *C.A.B. Construction Co.*, 110 Cal.App.2d 30, 34 [242 P.2d 87], it is said:

"Where the defense of plaintiff's contributory negligence is pleaded, . . . evidence of assumption of risk by the injured party and instructions relative thereto are proper." (Citing *Ury* v. *Fredkin's Markets, Inc.*, 26 Cal.App.2d 501, 502 [79 P.2d 749].)

■ While there is a distinction between the defense of assumption of risk and contributory negligence (Prosser on Torts, pp. 377-392; *Hayes* v. *Richfield Oil Corp.*, 38 Cal.2d 375, 384-385 [240 P.2d 580]) it does appear that the doctrine of assumption of risk is based on the theory that there has been a voluntary acceptance of a risk, and such acceptance, whether express or implied, requires knowledge and appreciation of the risk.

■ From the record, the evidence and proffered instructions, it appears that appellant Y. M. C. A. was relying on

such defense. It is the duty of the court to instruct on every theory of the case finding support in the evidence where there is a request to do so. (*Daniels* v. *City & County of San Francisco,* 40 Cal.2d 614 [255 P.2d 785] ; *Stickel* v. *Durfee,* 88 Cal.App.2d 402 [199 P.2d 16].) The evidence in the instant case would justify the giving of such an instruction. We are satisfied that the refusal to give it constituted error which was prejudicial to appellant.

 In respect to the appeal from the order denying the motion for judgment for appellant Y. M. C. A. notwithstanding the verdict, we are convinced that it was not within the power of the trial court to grant it because the denial of the motion of appellant Y. M. C. A. for a directed verdict in its favor, at the time it was made, was proper in view of the evidence pertaining to the negligence of its agent, made a party to said action, which might reasonably be imputed to Y. M. C. A., and whose negligence, at the time of ruling on the motion for a directed verdict, had not been determined by the jury. It is only where such previous denial of a directed verdict was erroneous, is a motion for judgment notwithstanding the verdict authorized. (*City & County of San Francisco* v. *Superior Court,* 94 Cal.App. 318, 321 [271 P. 121] ; Code Civ. Proc., § 629 ; *Hallinan* v. *Prindle,* 220 Cal. 46 [29 P.2d 202].)

We therefore conclude the order denying appellant judgment notwithstanding the verdict should be affirmed; that the judgment should be reversed, and since a new trial would accomplish nothing because the issue of claimed negligence of appellant Y. M. C. A. has no substantial support and has been previously determined, an order for entry of judgment for appellant Y. M. C. A. would be proper. (*Doremus* v. *Root,* 23 Wash. 710 [63 P. 572, 54 L.R.A. 649] ; *Kurata* v. *Los Angeles News Publishing Co.,* 4 Cal.App.2d 224, 228 [40 P.2d 520].)

Order denying judgment for appellant notwithstanding the verdict affirmed. Judgment reversed with directions to the trial court to enter judgment for appellant.

Mussell, J., concurred.

A petition for a rehearing was denied October 9, 1959, and respondent's petition for a hearing by the Supreme Court was denied November 18, 1959. Gibson, C. J., Traynor, J., and Peters, J., were of the opinion that the petition should be granted.