**PACIFIC EMPLOYERS INSURANCE COMPANY, a Corporation, Appellant,**

**v.**

**HARTFORD ACCIDENT AND INDEMNITY COMPANY, a Corporation, Appellee.**

**No. 14254.**

United States Court of Appeals Ninth Circuit.

Nov. 16, 1955.

Rehearing Denied March 27, 1956.

Moss, Lyon & Dunn, Los Angeles, Cal., for appellant.

James V. Brewer, Los Angeles, Cal., for appellee.

Before STEPHENS and FEE, Circuit Judges, and WIIG, District Judge.

WIIG, District Judge.

Pacific Employers Insurance Company (Pacific) appeals from an adverse judgment in an action for declaratory relief brought against it by Hartford Accident and Indemnity Company (Hartford). The respective liabilities of the two companies under their policies of insurance because of injuries to one Richard D. Carter presented a controversy within the jurisdiction of the United States District Court under 28 U.S.C.A. §§ 1332 and 1391.

Minnesota Mining and Manufacturing Company (Mining Company) entered into written contract with the Wm. P. Neil Company (Neil) whereby Neil was to construct a roofing granules plant on Mining Company property in Riverside County, California. As part of its cost-plus contract, Neil was required to pre-pare the site for an electric power substation on the property. The substation was to be built by the California Electric Power Company (Electric Company) under a separate agreement with Mining Company. An easement in gross was granted by Mining Company to Electric Company to enter the premises and construct the substation.

The site of the power substation was on a hill which Neil had leveled and on which had been constructed a retaining wall. Neil was filling in behind this wall with decomposed granite in order to bring the ground level up to the wall level. In this work, Neil used two dump trucks belonging to Mining Company. The trucks were backed parallel to the retaining wall where the backfilling was going on. Neil's flagman would signal to the truck driver the point at which to dump the load onto the fill.

When Neil had nearly completed the backfilling operations, Electric Company personnel entered the leveled site below the wall to begin laying concrete foundations for the substation. On November 18, 1947, a large rock dumped from one of the trucks rolled over the retaining wall and injured Carter, an employee of Electric Company, who was working below. Carter brought an action against the Mining Company, Neil and others in the state court of California on November 16, 1948.

As required by agreement with Mining Company, Neil had taken out two policies of insurance, each in the amount of $50,000. The policy with Pacific was for "public liability" and the policy with Hartford was for "automobile public liability."[1] While the Carter action was still pending in the state court, Hartford, on March 18, 1950, brought the action for declaratory relief against Pacific to determine their respective liabilities in regard to the policies covering

---

[1]. The contract between Mining Company and Neil required Neil to take out and maintain "public liability and property damage insurance * * * to protect the Contractor from damage claims arising from operations under this contract * * *." A separate clause provided for "automobile public liability insurance and property damage liability insurance on all motor vehicles engaged in operations under this contract * *."

Neil.[2] Thereafter, in January 1951, the Carter action was settled by Hartford and Pacific, each paying one-half of $22,-320 under an agreement preserving the rights of each in the declaratory relief action.

At the trial, Pacific claimed the entire loss should fall to Hartford, urging two principal grounds:

(1) The Pacific policy does not apply to the Carter accident because of an exclusion clause relating to automobiles on property not owned, rented or controlled by the insured, Neil;

(2) Even if the Pacific policy provides "coverage" to Neil, there is no liability as against Hartford, whose insurance is primary while Pacific's is only secondary.

The trial court rejected each of these contentions, holding that both insurers were equally liable on their policies and were coinsurers of Neil relating to the Carter accident.

Hartford does not dispute its liability under its policy, which offered coverage broad enough to include the Carter accident.[3] Its position is that the Pacific policy also provided "coverage" to the risk involved, making each an equal insurer of Neil with respect to Carter's claim.

An exclusion of the Pacific policy provided that "This policy does not apply: * * * to * * * (1) automobiles while away from premises owned, rented or controlled by the Insured * * *." Neil, the insured, did not own or rent the area, and the question narrows to its "control" of the premises. On this issue the trial court found that Neil, as general contractor for the entire project, had "general control of the premises" owned by Mining Company, so that the exclusion in the Pacific policy did not come into effect.

The original agreement between Mining Company and Neil indicates that Neil was to be responsible for the management and supervision of the entire project, subject only to certain rights reserved to Mining Company as to selection, inspection and performance of the work. Neil assumed full responsibility for performance of the work in all respects; for checking all material and labor entering the work; for the protection of the work; for providing danger signals and warnings; for the safety of equipment used; for the correctness of all measurements; and for keeping the work, streets, alleys and ground free from rubbish. Under these provisions, Neil maintained guards to keep unauthorized persons out of the construction area, and the evidence shows that Mining Company's resident engineer represented his company primarily to inspect the work done by Neil, not to supervise.

The word "control" has no strict or technical definition which necessarily excludes all others. Black's Law Dictionary (4th Ed.), p. 399, defines "control" as "Power or authority to manage, direct, superintend, restrict, regulate, direct, govern, administer, or oversee." It is said in Rose v. Union Gas & Oil Co., 6 Cir., 1924, 297 F. 16, 18, "The word 'control' does not import an absolute or even qualified ownership. On the contrary it is synonymous with superintendence, management, or authority to direct, restrict or regulate." Accord, L. L. Jarrell Construction Co. v. Columbia Casualty Co., D.C.S.D.Ala.1955, 130 F.Supp. 436; J. G. Speirs & Co. v. Underwriters at

---

2. Two other insurance companies were involved in the action. Anchor Casualty Company and United States Fidelity & Guaranty Company had insured the Mining Company. Motions for summary judgment were granted in their favor by the trial court and those policies are not involved in this appeal.

3. Hartford's policy extends coverage to "any person while using an owned automobile or a hired automobile." The policy also declares that the "Use of an automobile includes the loading and unloading thereof." The trial court found that the dump truck used by Neil was a 'hired automobile' within the meaning of the policy, and that the dumping operations at the retaining wall came within the definition of 'unloading.' Hartford's attorney conceded at the trial that its policy covered Neil.

Lloyd's, 1948, 84 Cal.App.2d 603, 191 P. 2d 124. These definitions lead us to accept the conclusion reached by the trial court, that Neil had such control of the premises that the exclusion in Pacific's policy did not come into effect.

Pacific also contends that the easement granted to Electric Company was separate and independent from Mining Company's agreement with Neil; that Neil had no control over Electric Company's operations, and that the easement acted to give control of the substation site to Electric Company rather than Neil. The trial court found that the easement, which was recorded, allowed Electric Company to construct, maintain, operate, inspect, repair, replace and remove electric lines on the premises, but was not such a right as would destroy the control of the premises by Neil; nor was it ever exercised or intended to be exercised on the portion of the premises where the backfilling operation was in progress.

The granting of the easement to Electric Company did not divest Mining Company of the incidents of ownership over the premises, and Mining Company could make any reasonable use of the land so long as it was not clearly inconsistent with the easement. City of Pasadena v. California-Michigan Land & Water Co., 1941, 17 Cal.2d 576, 110 P.2d 983, 133 A.L.R. 1186; Langazo v. San Joaquin Light & Power Corp., 1939, 32 Cal. App.2d 678, 90 P.2d 825; Dierssen v. Mc-Cormack, 1938, 28 Cal.App.2d 164, 82 P. 2d 212. The transfer of control over the premises to Neil is consistent with the granting of the easement to Electric Company. While it may be true that Electric Company was acting independently of Neil in beginning its work, un-til such time as Neil had completed filling in behind the retaining wall it still was responsible for the management and control of the site. The easement did not lessen that control.

In addition, the area where Neil's crew was working, behind the retaining wall, was exclusively within Neil's control, and the accident occurred because of the dumping operations there. The authorities cited by Pacific on this point do not alter the trial court's finding, which we accept. The conclusion that Neil controlled the premises means that both policies covered Neil's liability for the Carter accident.

It is contended by Pacific that the Hartford policy afforded primary insurance while the Pacific policy gave only secondary insurance, making Hartford primarily liable for payment up to the amount of its policy limits.[4]

Under the terms of its policy, Pacific agreed to pay all sums Neil, a corporation, might be obligated to pay by reason of liability imposed by law on Neil arising out of claims for personal injury and property damage. Hartford's policy insured Neil and "any person while using an owned automobile or a hired automobile * * *." There is no question that Neil's corporate liability was covered by both policies and that it had double insurance.[5] Pacific urges, however, that Hartford's policy, in addition to insuring Neil, also insured the truck driver and the flagman, who were two of the five employees found to be guilty of negligence in connection with the Carter accident.[6]

Pacific's theory is that where two insurers cover a given risk, but one policy provides extended coverage so as to in-

---

4. Hartford's policy limit is $50,000 for each person, well above the settlement figure of $22,320.

5. Double insurance is defined in California Insurance Code, § 590, as: "A double insurance exists where the same person is insured by several insurers separately in respect to the same subject and interest."

6. The trial court found that the truck driver and the flagman were covered by Hartford but that Pacific's policy did not insure "anyone other than the Wm. P. Neil Company and did not, as respects to the truck in question, extend its insurance to the truck driver and flagman." Neither policy can be said to have covered the three supervisory employees who were found to be negligent.

sure the ultimately liable individuals, while the other covers only the named insured, whose liability is vicarious, and the named insured has a right of recovery over against the persons primarily or ultimately liable, then the insurer of the named insured is subrogated to the rights of the named insured and has a right of recovery against those ultimately liable and against the insurer providing extended coverage.

Explained in terms of the present controversy, Pacific argues that while both policies cover Neil's corporate liability, only Hartford's provides extended coverage to the truck driver and the flagman, who were the primarily liable tort-feasors. Under California law, Neil, liable vicariously through the doctrine of respondeat superior, can recoup his losses from the driver and the flagman.[7] Pacific, as insurer of Neil only, and under its rights of subrogation, can recover from Hartford, who also insured the negligent driver and flagman.

This was Pacific's position during the trial. The trial judge, although not rejecting the law argued, did make findings of fact which excepted the facts of the case from the operation of the primary-secondary liability theory. The relevant findings are in substance:

(1) The negligence of the supervisory employees of Neil through acts and omissions in the management of the loading and dumping operations renders Neil itself negligent, defeating any right of recovery over against the flagman and driver since there is no contribution between joint tort-feasors and the defense of contributory negligence could be asserted against Neil;

(2) The statute of limitations had run on any claim of Neil against its employees for recoupment before the trial of this case, and any rights in Pacific to subrogation would likewise be barred.

Three cases support the legal proposition urged by Pacific. In United Pacific Ins. Co. v. Ohio Casualty Ins. Co., 9 Cir., 1949, 172 F.2d 836, two insurers covered separate partnerships. One of the insurers provided extended coverage to the individual whose negligence resulted in injury to another. In an action between the two insurers following a settlement, the court held that the insurer of the ultimately liable tort-feasor must bear the loss. Canadian Indemnity Co. v. United State Fidelity & Guaranty Co., 9 Cir., 1954, 213 F.2d 658,[8] followed the United case, in theory. In discussing United, the court says, 213 F.2d at page 659:

> "In that case we recognized the right of an employer to recoup his losses from a negligent employee, * * *. We also held that the insurer of the employer may recover against the insurer of the negligent employee."

The court held that the company covering the one liable on a vicarious basis only could recover from the insurer of the primarily negligent party. In a case more factually similar to the present, Maryland Cas. Co. v. Employers Mutual Liability Ins. Co., 2 Cir., 1953, 208 F.2d 731, 732, plaintiff covered the employer and " 'any person while using an owned automobile' ", while defendant insured the employer alone. An employee was negligent, causing an injury. After plaintiff settled the claim of the injured party, he sought recovery from defendant, which had refused to assist in the defense or the settlement. In reversing the district court,[9] the Court of Appeals, through Judge Learned Hand, stated, 208 F.2d at page 732, "We shall try to show that to

---

7. United Pacific Ins. Co. v. Ohio Casualty Ins. Co., 9 Cir., 1949, 172 F.2d 836, footnote 5 at page 840: "An employer against whom a judgment has been rendered for damages occasioned by the unauthorized negligent act of an employee may recoup his losses in an action against the negligent employee. See Johnston v. City of San Fernando, 35 Cal.App.2d 244, 246, 95 P.2d 147; Myers v. Tranquility Irr. Dist., 26 Cal. App.2d 385, 389, 79 P.2d 419."

8. Affirming United States Fidelity & Guaranty Co. v. Church, D.C.N.D.Cal. 1952, 107 F.Supp. 683.

9. D.C.D.Conn.1953, 112 F.Supp. 272.

allow the plaintiff to recover any part of the payment, made in settlement of this action, would result in a circuity of action." The court goes on to say that if plaintiff recovered part of the loss from defendant, both would have been subrogated to the rights of the employer. Since the law of Connecticut, where the transaction arose, allows recoupment from a negligent servant,[10] defendant, as insurer of the employer, could have obtained a judgment against the negligent employee, and if the employee paid this sum, he could have recovered it from the plaintiff, his insurer. This would amount to a complete circuity of action. Under this state of facts, the court held that plaintiff could not recover any part of the amount paid in settlement from defendant.

■ The effect of these cases, or the rule to be drawn from them, may be stated in this way: An insurer providing extended coverage is ultimately liable as against an insurer providing coverage only to the named insured, where the named insured's liability is vicarious only, and that named insured has a right of recovery over against the person or persons primarily liable, to whom coverage has been extended only by the extended coverage provision of the first insurer.

The fact that a settlement of the state court action was made by Pacific and Hartford does not alter their rights. A similar settlement was reached in the United case, 172 F.2d at pages 841–842, where both insurers paid equal sums to the injured party conceding joint liability to the named insured as in this case. The theory in United was that the insurer of the primarily liable tort-feasor was obligated to reimburse the insurer of the named insured for all expenditures reasonably and necessarily made on behalf of the named insured, including a reasonable and necessary settlement of the claim of the injured party. The settlement by the two insurers here admitted Neil's liability to Carter and avoided the necessity of wading through to final judgment in his case in the state court.

■ Neil has never proceeded against the negligent driver or flagman for contribution for their wrongful acts. But such is not necessary under the three cited cases, supra. Those decisions remove the need for proceeding through the tangle of claims involved to determine ultimate liability. Both the United and Maryland Casualty cases speak in terms of avoiding multiplicity of suits or circuity of action. The relief sought in a declaratory judgment action of this nature is broad enough to allow the court to settle all issues without forcing the parties to proceed separately against those who may be liable. In the United case, both parties stipulated and agreed to have all potential issues decided in the single action; in this case, no such stipulation was made, but Hartford's complaint, we believe, is expansive enough to allow this court to decide all necessary issues to a final determination of the matter.[11] The agreement made between Hartford and Pacific regarding the settlement of the state court action adds support to this conclusion.[12] Even more

---

10. As does the law of California. See footnote 7 supra, and discussion of Canadian Indemnity Co. v. United States Fidelity & Guaranty Co., supra.

11. Hartford's complaint concludes as follows: "Wherefore, this plaintiff prays that the Court make its decree ascertaining and declaring the rights of the parties in respect to the various contracts of insurance prescribed in this amended complaint * * * and for such other and further relief as may seem just and meet."

12. Excerpts from the Hartford-Pacific settlement agreement follow:

"It is further agreed that on the adjudication in the declaratory relief action of the liabilities of the parties * * * that they will immediately pay * * * any sums that they would have been required to pay had that adjudication or such settlement been had before settlement or a judgment in the case of Carter vs. Neil and the mining company * * *.

"It is understood that this agreement is intended to preserve all of the rights

persuasive is the fact that to render a declaratory judgment in this case the court must inquire into the respective liabilities of all the parties. The trial judge was well aware of this in making his findings of fact and conclusions of law which went beyond the mere declaration of the rights of the two insurers. His judgment took into consideration the liability of Neil's employees, both supervisory and other and the rights of Neil to proceed against them, and we will consider all the aspects of the controversy in reaching our decision.

Hartford maintains that there is no primary or secondary insurance theory applicable in California, citing three California appellate cases containing language to that effect.[13] The same argument was raised and rejected by this court in Canadian Indemnity Co. v. United States Fidelity & Guaranty Co., supra, 213 F.2d at pages 659–660. Our re-examination of the California cases leads us to a like conclusion, that in a situation such as is presented in the case at bar, where two insurance companies seek to determine the nature and extent of their liabilities *inter se,* the law is correctly stated in the United and Canadian Indemnity cases, supra.

The trial court found that Neil was a tort-feasor jointly with the truck driver and the flagman, because of the negligence of three supervisory employees, and any action by Neil against the truck driver and the flagman would be seeking contribution between joint tort-feasors, frowned on by the California courts in actions where their concurrent negligence makes them joint tort-feasors. Smith v. Fall River Joint Union High School Dist., 1934, 1 Cal.2d 331, 34 P.2d 994; Adams v. White Bus Line, 1921, 184 Cal. 710, 195 P. 389. Furthermore, Neil would then be subject to a defense of contributory negligence and would be profiting from its own wrong. If, however, Neil is liable on an imputed basis, because of respondeat superior, then it would have the right of recovery against its own employees, and that right would pass to Pacific through subrogation. Bradley v. Rosenthal, 1908, 154 Cal. 420, 97 P. 875; Myers v. Tranquility Irr. Dist., 1938, 26 Cal.App.2d 385, 79 P.2d 419.

There is no dispute as to the negligence of the truck driver and the flagman in failing to ascertain that Carter and other Electric Company personnel were working below the retaining wall. Pacific contends that the trial court erred in its finding that the supervisory employees of Neil were negligent, that such negligence was a proximate cause of the injuries to Carter, and that this would bar any action of Neil against the truck driver and the flagman because Neil would be *in pari delicto* and would be subject to the defense of contributory negligence.

The supervisory employees which the trial court found to be negligent were Andrew Jensen, Neil's superintendent of construction; Robert Grace, labor foreman in charge of the flagman; and Hubert Jones, equipment or excavation foreman. Their depositions were read into evidence. Jensen stated that the day before the accident he informed the Electric Company crew they were "premature and they better leave until we were ready for them." No such orders were relayed on the day of the accident, although Jensen said he ordered Grace "to get up there (to the retaining wall site) and clarify it." Grace, who was in direct charge of the backfilling operation, said that he received no word from Jensen as to stopping the operation. Grace made periodic checks of the backfilling

of each party hereto under their respective policies and under the facts of the case and is intended to prevent any claim of waiver * * *."

13. Consolidated Shippers, Inc. v. Pacific Employers Ins. Co., 1941, 45 Cal.App.2d 288, 114 P.2d 34; Air Transport Mfg. Co. v. Employers Liability Assur. Corp., 1949, 91 Cal.App.2d 129, 204 P.2d 647; Employers Liability Ins. Corp. of London England v. Pacific Employers Insurance Co., 1951, 102 Cal.App.2d 188, 227 P.2d 53. And see Traders & General Ins. Co. v. Pacific Employers Ins. Co., 1955, 130 Cal.App.2d 158, 278 P.2d 493.

operations, but at the time of the accident he was working with another crew on a different project. He testified he was going to check the backfill operation later. Jones testified that he was unaware the fill was nearing the top of the wall, and no other testimony connects him with the accident. None of the three supervisory employees was present when the accident occurred.

The foreman of the Electric Company crew indicated that he was not told to stay out of the backfilling or substation site, although Neil's employees knew the crew was present. Shortly before the accident, he stated, the flagman had told him that they were not going to dump that morning.

 The trial court's finding on this testimony that such negligence rendered Neil liable as a joint tort-feasor and not solely on the basis of respondeat superior is, in our opinion, erroneous. Under California law, when the tort is committed in accordance with the express orders of corporate officers or agents carrying out corporate policy, the corporation is a joint tort-feasor, Benson v. Southern Pacific Co., 1918, 177 Cal. 777, 171 P. 948; McInerney v. United Railroads, 1920, 50 Cal.App. 538, 195 P. 958, and the corporation is jointly liable when the tort by the employee is expressly ratified by the corporation. Jameson v. Gavett, 1937, 22 Cal.App.2d 646, 71 P. 2d 937; Davison v. Diamond Match Co., 1935, 10 Cal.App.2d 218, 51 P.2d 452. However, if the tort is the undirected act of the employee acting within the scope of his employment, the corporation is liable solely under the doctrine of respondeat superior. Bradley v. Rosenthal, 1908, 154 Cal. 420, 97 P. 875. The testimony shows that the three supervisory employees failed to take steps to prevent the accident. It cannot be said on this state of the record that they were carrying out corporate policy, and there is no evidence that their acts, or omissions, were ratified by Neil.

Neil, having discharged its obligation to Carter under the doctrine of respondeat superior, had a right of recovery over against all the negligent employees, and this right passed to Pacific and to Hartford. As the insurer of two negligent employees, the truck driver and the flagman under the extended coverage provisions of its policy, Hartford is defeated in its right of subrogation because it cannot recover from its own insured. This leaves Pacific as sole subrogee and gives it the right to recover over against Hartford as the insurer of the truck driver and the flagman. The fact that the three supervisory employees were not within Hartford's extended coverage provisions does not alter the situation. Since there is no right to contribution between joint tort-feasors each concurrently liable, Hartford, as the insurer of two of the employees, must, under the terms of its policy, bear the loss occasioned by the settlement of Carter's action for damages.

The trial court held that Pacific's subrogation rights, if any, would have accrued on the date of the settlement with Carter, January 27, 1951, and because the action for declaratory relief was tried in March 1952, Pacific at that time would be barred by a one-year statute of limitations [14] pertaining to an action against the truck driver and the flagman. We find this ruling to be erroneous for two reasons.

 Although an insurer subrogated to the rights of an insured is subject to the same statute of limitations as the insured, Automobile Ins. Co. of Hartford, Conn. v. Union Oil Co., 1948, 85 Cal.App. 2d 302, 193 P.2d 48, still an action by Pacific as subrogee of Neil against the two employees would not be a personal action but rather an action for the enforcement of a right based upon an implied contract of indemnity, Ohio Casualty Co. v. Capolino, Ohio App.1945, 65 N.E.2d 287, and a two-year statute of limitations would be applicable.[15] Thus, either Neil or Pa-

14. California Code of Civil Procedure, § 340, subd. 3.

15. California Code of Civil Procedure, § 339, subd. 1; see Restatement, Restitution, Sec. 96.

cific could have brought an action against the employees prior to January 27, 1953.

 More persuasive, however, is the fact that prior to the time Carter's action for damages was settled, Pacific and Hartford were parties to an agreement, dated January 15, 1951, which contemplated the settlement and which had been entered into to protect any claim of waiver of the provisions of the policies of insurance or from any claim of voluntary action, and to preserve all such rights to the contracting parties. It also contained a recital relating to the pendency of the action for declaratory relief "which suit has as its purpose the declaration of the liabilities of each of the said insurance companies in respect to" the Carter action. Other pertinent provisions of the agreement are set forth in note 12.

We believe that under the agreement the parties expressly waived any rights predicated on the passage of time, and Hartford may not now prevail in its attempt to alter the intent of the parties so clearly expressed in the agreement.

The judgment is reversed and remanded with directions to enter judgment for Pacific against Hartford in the amount of $11,160, which sum represents the money expended by Pacific in the Carter action.