[Civ. No. 32047.    Second Dist., Div. Two.    Feb. 18, 1969.]

PACIFIC INDEMNITY COMPANY, Plaintiff and Respondent, v. LIBERTY MUTUAL INSURANCE COMPANY, Defendant and Appellant.

Virgil R. Wells for Defendant and Appellant.

Ball, Hunt, Hart & Brown and Stephen A. Cirillo for Plaintiff and Respondent.

FLEMING, J.—Which of two insurers should stand the loss attributable to the operation of an automobile leased out for a two-year period, the insurer of the lessee-operator or the insurer of the lessor-owner? Brown-Massie & Associates, the

lessee-operator of the leased automobile (car No. 901), was insured under a comprehensive liability policy issued by Pacific Indemnity Company. California Rent Car, the lessor-owner of the automobile, was insured under a comprehensive liability policy issued by Liberty Mutual Insurance Company. Car No. 901, while being driven by an employee of Brown-Massie, became involved in an accident. In the subsequent controversy between the two insurers over which one carried ultimate responsibility for the loss, the trial court concluded that coverage under the policy of California Rent Car, the lessor-owner, was primary, and entered judgment for $167,000 against the lessor-owner's insurer, Liberty Mutual, in favor of Pacific Indemnity, which had paid the claims arising from the accident.

For purposes of the present case we assume that both policies of liability insurance covered the vehicle involved in the accident. (*Abbott* v. *Interinsurance Exchange,* 260 Cal. App.2d 528, 532-538 [67 Cal.Rptr. 220].) Under this assumption the sole problem is to determine which coverage is primary. In arguing this question, counsel have advanced a variety of suppositions about public policy in the automobile insurance field and about the effect of various clauses in the comprehensive liability policies issued by the two carriers.

On public policy the argument ranged indiscriminately from considerations governing the $15,000 and $30,000 statutory liability of an owner for permissive use (Veh. Code, § 16451), to those affecting the unlimited liability of an operator, to those involving liability imposed by law on insurers who write motor vehicle insurance. In our view most of the suppositions about public policy and most of the rules said to be derived from a particular policy are unrelated to the merits of this particular case. ▮▮▮ While there are limitations and restrictions, both statutory and judge-made, on the terms of automobile insurance, as for example, the rule of *Wildman* v. *Government Employees' Ins. Co.,* 48 Cal.2d 31 [307 P.2d 359], that an insurer issuing a policy covering a particular vehicle cannot absolve itself from liability for acts of those driving the vehicle with permission, the basic rules in insurance law still derive from freedom of contract. (*Continental Cas. Co.* v. *Phoenix Constr. Co.,* 46 Cal.2d 423, 432 [296 P.2d 801, 57 A.L.R.2d 914].) Both owners and lessees of automobiles are legally free to operate their vehicles without insurance coverage and assume their own risks. They may agree

between themselves that one will insure and the other will not. As a matter of precaution both may insure, regardless of prior agreement. Or they may agree that one will provide insurance whose coverage will be primary for a particular risk. Within limits insurers have the same flexibility of arrangements available to them. An insurer may cover some but not all vehicles owned by a particular insured. An insurer may cover some but not all vehicles operated by a particular operator. (*Fullerton* v. *Houston Fire & Cas. Ins. Co.*, 234 Cal.App.2d 743, 751-752 [44 Cal.Rptr. 711].) An insurer may cover vehicles owned by an insured but not cover vehicles leased by the same insured from others. This basic freedom of contract finds statutory expression in section 16453 of the Vehicle Code, which declares that any motor vehicle liability policy may contain any agreements, provisions, or stipulations not otherwise contrary to law. ▮▮ When, as we have assumed here, dual coverage is provided for the same risk, public policy plays a minor role in the determination of which coverage is primary, for to the public it makes little difference which of two insurers is ultimately held responsible for a particular loss. On the limited role played by public policy in instances of duplicate insurance coverage the court in *Wilshire Ins. Co.* v. *Transit Cas. Co.*, 248 Cal.App.2d 719, 724 [56 Cal.Rptr. 861], had this to say: "It is urged by Transit that the public policy expressed in *Wildman* v. *Government Employees' Ins. Co.*, 48 Cal.2d 31 [307 P.2d 359], militates against the owner's policy not being primary. This suggestion was effectively answered in *American Motorists Ins. Co.* v. *Underwriters at Lloyd's London*, 224 Cal.App.2d 81, 86 [36 Cal. Rptr. 297]. The public policy is satisfied if the injured third party is financially protected. He has no interest in where the money comes from." Since in the case at bench we have assumed that two insurers have each covered the same risk, no considerations of policy require that one of them be held primarily liable for a particular loss. Rather the determination of primary liability between the two insurers for the loss attributable to the operation of car No. 901 must be resolved by what the principals said and did and what commitments arose as a consequence of their words and conduct.

We next examine the texts of the two insurance policies for enlightenment as to which insurer should be held primarily liable. In this process counsel for each insurer points to language in the comprehensive liability policy of the other insurer to establish coverage by the other insurer and then

points to exculpatory language in the policy of his own client which purports to propel liability elsewhere in instances of dual coverage. From these exculpations each counsel triumphantly concludes that the liability of the other insurer is primary and that of his own client is excess. But since both policies contain many of the same clauses, particularly the other-insurance clause, and since both policies cover both insureds (*Stolte, Inc.* v. *Seaboard Surety Co.*, 250 Cal.App.2d 169, 172 [58 Cal.Rptr. 477]), this approach takes us nowhere except in a large circle.[1] We think the comments of Judge Healy of the United States Court of Appeals in *Oregon Auto. Ins. Co.* v. *United States Fid. & Guar. Co.*, 195 F.2d 958, 959-960, are pertinent: ''It is plain that if the provisions of both policies were given full effect, neither insurer would be liable. The parties admit that such a result would produce an unintended absurdity, and each argues that the court must settle upon some way of determining which policy is primary and which secondary. . . . We have examined cases in other jurisdictions cited by counsel where closely similar or substantially identical disputes between insurance companies have arisen. These decisions point in all directions. . . . Their reasoning appears to us completely circular, depending, as it were, on which policy one happens to read first. Other cases seem to

[1]For example, the other-insurance clause of each policy is identical and reads:

''If the insured has other insurance against a loss covered by this policy the company shall not be liable under this policy for a greater proportion of such loss than the applicable limit of liability stated in the declarations bears to the total collectible insurance against such loss; provided, however, the insurance under this policy with respect to loss arising out of the maintenance or use of any hired automobile insured on a cost of hire basis or the use of any non-owned automobile shall be excess insurance over any other valid and collectible insurance.''

This clause can be construed in several ways to achieve the result desired by the litigant. For example:

I *Pacific Indemnity Policy*:

''If the insured [Brown-Massie] has other insurance [Liberty Mutual] against a loss covered by this policy . . . the insurance under this policy [Pacific Indemnity] with respect to loss arising out of the maintenance or use of any hired automobile insured on a cost of hire basis or the use of any non-owned automobile [by Brown-Massie] shall be excess insurance over any other valid and collectible insurance [Liberty Mutual].''

    Result: Pacific Indemnity's excess insurance clause applies.
               Liberty Mutual liable.

II *Pacific Indemnity Policy*:

''If the insured [California Rent Car] has other insurance [Liberty Mutual] against a loss covered by this policy . . . the insurance under this policy [Pacific Indemnity] with respect to loss arising out of the maintenance or use of any hired automobile insured on a cost of hire

recognize the truth of the matter, namely, that the problem is little different from that involved in deciding which came first, the hen or the egg.'' In interpreting similar or identical insurance clauses, if we read Pacific Indemnity's policy as it claims it should be read, Pacific Indemnity will be absolved from most of the risk in instances of dual insurance, and liability will fall on Liberty Mutual. If we read Liberty Mutual's policy as it claims it should be read, Liberty Mutual will be absolved from most of the risk in instances of dual insurance, and liability will fall on Pacific Indemnity. (*American Motorists Ins. Co.* v. *Underwriters at Lloyd's London,* 224 Cal.App.2d 81, 87 [36 Cal.Rptr. 297].) ▮ But in the construction of ambiguous policies the literal terms of the policies themselves carry less weight than the substance of the transaction involved. (*Steven* v. *Fidelity & Cas. Co.,* 58 Cal.2d 862, 869, 884 [27 Cal.Rptr. 172, 377 P.2d 284]; *Atlantic Nat. Ins. Co.* v. *Armstrong,* 65 Cal.2d 100, 111-112 [52 Cal.Rptr. 569, 416 P.2d 801]; *Gray* v. *Zurich Ins. Co.,* 65 Cal.2d 263, 273-274 [54 Cal.Rptr. 105, 419 P.2d 168].) To that substance we now turn.

Respondent Pacific Indemnity relies on the general rule that, other things being equal, primary liability falls on the insurer of the owner rather than on the insurer of the oper-

---

basis or the use of any non-owned automobile [not applicable] shall be excess insurance over any other valid and collectible insurance.''
　　Result: Pacific Indemnity's excess insurance clause does not apply.
　　　　　Pacific Indemnity liable.

III *Liberty Mutual Policy:*
　　''If the insured [Brown-Massie] has other insurance [Pacific Idemnity] against a loss covered by this policy . . . the insurance under this policy [Liberty Mutual] with respect to loss arising out of the maintenance or use of any hired automobile insured on a cost of hire basis or the use of any non-owned automobile [by Brown-Massie] shall be excess insurance over any other valid and collectible insurance [Pacific Indemnity].''
　　Result: Liberty Mutual's excess insurance clause applies.
　　　　　Pacific Indemnity liable.

IV *Liberty Mutual Policy:*
　　''If the insured [California Rent Car] has other insurance [Pacific Indemnity] against a loss covered by this policy . . . the insurance under this policy with respect to loss arising out of the maintenance or use of any hired automobile insured on a cost of hire basis or the use of any non-owned automobile [not applicable] shall be excess insurance over any other valid and collectible insurance.''
　　Result: Liberty Mutual excess insurance clause does not apply.
　　　　　Liberty Mutual liable.
　　Obviously, Pacific Indemnity will plump for interpretations I and IV and Liberty Mutual for II and III.

ator. No statute compels such a result, and its origin apparently lies in custom and practice within the insurance business, which is followed by the courts in instances where no other factors have come into play. (*American Auto. Ins. Co.* v. *Republic Indem. Co.*, 52 Cal.2d 507, 512-513 [341 P.2d 675]; *Wilshire Ins. Co.* v. *Transit Cas. Co.*, 248 Cal.App.2d 719, 724 [56 Cal.Rptr. 861].)

But the rule placing primary liability on the insurer of the owner in instances of duplicate coverage is a product of presumed intention and is only applied when the parties have made no specific agreement on the subject. If the evidence in a particular case shows the parties intended some other arrangement, then, as with other contracts, the specific intention of the parties will displace a general intention attributable to them in their silence. Their specific agreement will override the general rule.     ''As an aid to construction we observe the following complementary rules of law: '. . . An insurance company has the right to limit the coverage of a policy issued by it and when it has done so, the plain language of the limitation must be respected.' (*Continental Cas. Co.* v. *Phoenix Constr. Co.*, 46 Cal.2d 423, 432 [296 P.2d 801, 57 A.L.R.2d 914]; *Oakland Stadium* v. *Underwriters at Lloyd's, London*, 152 Cal.App.2d 292, 296 [313 P.2d 602].) . . . We also enlist here another aid to insurance policy interpretation: '. . . The intent and meaning of the parties is far more important than the strict and literal sense of the words used in the contract. For that reason it is equally important to consider the subject matter of insurance and the purpose or object which the parties had in view at that time; and in addition to these matters, it is often considered proper to consider the business of the parties, the circumstances surrounding the making of the contract, the situation of the property, and all other conditions which have a legitimate bearing upon the intention of the parties.' (13 Appleman, Insurance Law and Practice, § 7385, pp. 32-33.)'' (*Underwriters at Lloyd's of London* v. *Hunefeld*, 230 Cal.App.2d 31, 38-39 [40 Cal.Rptr. 659].)

Is the present case one in which specific agreements of the parties supersede the general rule? The four principals involved—California Rent Car, Brown-Massie, Pacific Indemnity, and Liberty Mutual—constructed a relationship of rights, liabilities, privileges, and immunities with one another around a framework of three related contracts: (1) the lease

contract between California Rent Car and Brown-Massie; (2) the insurance contract between Brown-Massie and Pacific Indemnity; and (3) the insurance contract between California Rent Car and Liberty Mutual. Each of these contracts contains a clear expression of the intent of the principals about who should carry the risk of liability attributable to the operation of car No. 901.

The contract, dated 28 April 1962, under which car No. 901 was leased for a two-year period by California Rent Car to Brown-Massie stated: ''It is hereby understood that Brown, Massie & Associates will supply and pay for Bodily Injury with limits of $100,000-$300.000 and Property Damage Insurance with limits of $100,000 on this car leased from the California Rent Car and will furnish a copy of this policy with the California Rent Car endorsed thereon as an additional insured.''

It is evident from this provision of the leasing contract that California Rent Car intended liability insurance coverage for car No. 901 to be provided by Brown-Massie and that it contracted to that effect with Brown-Massie; that Brown-Massie intended to obligate itself to provide liability insurance coverage for car No. 901 and promised California Rent Car it would do so.

Brown-Massie, in order to carry out its promise to California Rent Car, secured an added endorsement from Pacific Indemnity to its existing comprehensive liability policy. Endorsement No. 9 to its Pacific Indemnity policy, effective 4 May 1962, read: ''It is agreed that California Rent Car is an Additional Insured under this policy but only as respects their interest in automobiles leased by him to the Named Insured.''

It is evident from the text of endorsement No. 9 that Brown-Massie intended to fulfill its obligation to California Rent Car to procure insurance for the latter's benefit, and so contracted with Pacific Indemnity; that Pacific Indemnity intended to provide coverage under its endorsement for California Rent Car, and so contracted.

The terms of the two previously mentioned contracts harmonize with the terms of the policy of comprehensive liability insurance issued by Liberty Mutual to California Rent Car, which, also in endorsement No. 9, stated: ''This policy does not apply to: . . . any automobile rented or leased under a contract for the exclusive use of a customer for one year or more.''

It is evident from endorsement No. 9 that both California Rent Car and Liberty Mutual intended to exclude from the coverage of the policy vehicles leased under long-term contract. Whether or not the exclusion succeeded in its intended effect, it is clear that both parties sought to make it a part of their contract.

From this trinity of related contracts we infer that all principals interested in the risk attached to the operation of car No. 901 intended Pacific Indemnity to carry that risk. And from the existence of this intention we deduce the further intention that in instances of dual coverage involving the other principals coverage by Pacific Indemnity would become primary. Indeed, were this not so, it would appear pointless for California Rent Car and Brown-Massie to have put in their contract the provision about insurance which they did, and pointless for Brown-Massie to have obtained the endorsement to its Pacific Indemnity policy which it did.

We conclude that both insureds and both insurers intended the risk attributable to the operation of car No. 901 to become the responsibility of the lessee and intended that in instances of dual coverage among themselves the lessee's insurer would carry the primary liability. In these circumstances the disposition of the case is controlled by the reasoning of the Supreme Court in *American Auto. Ins. Co.* v. *Republic Indem. Co.*, 52 Cal.2d 507, 513 [341 P.2d 675], which specifies intention of the principals as the critical factor in allocating primacy of coverage between duplicate insurers. As the court later said in *Atlantic Nat. Ins. Co.* v. *Armstrong*, 65 Cal.2d 100, 112 [52 Cal.Rptr. 569, 416 P.2d 801]: "In interpreting an insurance contract we must consider the intent and reasonable expectations of the parties in entering into the agreement. Hence, we must evaluate not only plaintiff's contract form, but also McKeown's knowledge and understanding as a layman and his normal expectation of the extent of coverage of the policy. (*Steven* v. *Fidelity & Cas. Co.*, 58 Cal.2d 862, 869 [27 Cal.Rptr. 172, 377 P.2d 284].) It cannot be doubted that he intended to relieve himself of liability which might arise out of the operation of the automobile. for surely he did not enter into the contract solely for the benefit of strangers who might be injured." ▉ Nothing in the Insurance Code restricts the freedom of insurers and insureds to allocate risks among themselves to suit themselves, so long as the interests of third parties are adequately protected. (*Home*

*Indem. Co.* v. *Mission Ins. Co.,* 251 Cal.App.2d 942, 947 [60 Cal.Rptr. 544].)  ▆▆ Since full coverage has been provided under two comprehensive liability policies, no reasons of policy require us to override the specific intention of the principals involved. We conclude that their expressed intention should be respected, that in accordance with that intention the liability of Pacific Indemnity is primary.

We close with some reference to the practical justification for the allocation of liability in the manner in which the principals did. In most instances of long-term lease of an automobile the lessee will have closer control and supervision over the operation of the vehicle than will the owner, and the lessee will be in a better position to take precautions to reduce the incidence of accident and the consequent risk of liability. Accordingly, in giving effect to the intention of the principals to allocate primary liability to the insurer of the lessee-operator, we also support their practical decision to place primary responsibility on the entity in the better position to minimize the risk of loss.

Since the primary coverage falls on Pacific Indemnity and the coverage of Liberty Mutual is excess, the judgment is reversed.

Roth, P. J., and Herndon, J., concurred.