[Civ. No. 33973. Second Dist., Div. One. Feb. 27, 1970.]

TRANSPORT INDEMNITY COMPANY, Plaintiff and Respondent, v. AMERICAN FIDELITY & CASUALTY COMPANY, Defendant and Appellant.

AMERICAN FIDELITY & CASUALTY COMPANY, Plaintiff and Appellant, v. MILNE TRUCK LINES, Defendant and Respondent.

(Consolidated Cases.)

## COUNSEL

Gilbert, Thompson, Kelly, Crowley & Jennet, Everett W. Thompson and Jean Wunderlich for Defendant and Appellant and for Plaintiff and Appellant.

Dryden, Harrington & Swartz and Vernon G. Foster for Plaintiff and Respondent and for Defendant and Respondent.

## OPINION

**THOMPSON, J.**—This is an appeal by American Fidelity & Casualty Company (American) from a judgment entered in favor of Transport Indemnity Company (Transport) and Milne Truck Lines (Milne) in two declaratory relief actions consolidated for trial. The judgment decrees that American is primarily obligated to indemnify Milne and B & D Trucking Com-

pany (B & D) against a prior stipulated judgment entered against Milne and B & D in a wrongful death action. The judgment also grants Transport reimbursement from American of the sum of $37,500 paid by Transport on behalf of Milne in partial settlement of the wrongful death suit.

## Facts

American is the insurer of B & D and its vehicles. Transport is the insurer of Milne. The American policy indemnifies against liability for personal injury or death "arising out of the ownership, maintenance or use of the automobile[s]." The definition of the insured covered by that policy "includes the named insured [B & D] and also includes any person while using an owned automobile . . . and any person legally responsible for the use thereof, provided the actual use of the automobile is by the named insured or with his permission . . . ."

The American policy excludes coverage, "(3) if such person . . . so engaged is insured under an automobile liability insurance policy which affords coverage for automobiles hired by such person . . . ."

The Transport policy indemnifies against "all damages which the insured shall become legally obligated to pay including contractual obligations, for damages which arise out of the occupation of the named insured . . . as a result of personal injury . . . [or] death to persons . . . ." The definition of the insured covered by that policy is, "the named insured [Milne] [and] any executive officer, director or stockholder . . . [of Milne] while acting within the scope of his duties . . . ."

On June 8, 1959, B & D leased a truck and trailer to Milne. The written agreement of lease provides in paragraph 13 that Milne agrees to assume full responsibility to the public arising out of the operation of the leased equipment. By the lease, B & D agrees to furnish the services of Kenneth Castlebury as driver of the truck and trailer subject, however, to Milne's "complete control . . . and direction."

After the truck and trailer had been leased to Milne by B & D and on the same day the lease was consummated, the truck and trailer collided with another parked on the San Bernardino Freeway. Merrill Dale McMinn was killed in the accident. His heirs sued B & D, Milne, and Castlebury for wrongful death alleging negligent operation of the leased vehicle. The suit was compromised by a stipulated judgment in favor of the plaintiffs and the payment of $75,000. American and Transport each contributed $37,500 to the settlement pursuant to an agreement between them reserving the right to litigate their respective rights and obligations resulting from the payment.

The present action for declaratory relief was commenced by Transport.

It contends that coverage under the American policy is primary and that therefore American is obligated to reimburse Transport for the $37,500 advanced by it and for $2,392.95 expended for the cost of defending the wrongful death action. American subsequently filed a suit against Milne claiming that under its policy it is subrogated to all rights of recovery that B & D may have against persons or organizations. American alleges that B & D, and thus by right of subrogation, American, by virtue of the indemnity provisions contained in the lease, is entitled to recover from Milne all sums it has paid or will be required to pay in satisfaction of the stipulated judgment. The two actions were consolidated for trial.

The trial court, it must be assumed, found that Castlebury's negligent operation of the leased truck caused the death of McMinn. The trial court found expressly that at the time of the accident Castlebury was an employee of B & D acting within the course and scope of his employment and that he was operating the truck with its permission and consent. It also found Castlebury to be a special employee of Milne acting at the time of the collision within the scope of that employment relationship.

The trial court concluded the following: Transport and American are subrogated to the extent of $37,500 to the positions of Milne and B & D, respectively. The claims of the heirs of McMinn against B & D and Milne were founded upon the doctrine of *respondeat superior* and arose from the imputed negligence of Castlebury. Since B & D and Milne are entitled, as employers, to indemnity from Castlebury, a negligent employee, American and Transport are entitled as subrogees to succeed to their rights of indemnification against Castlebury or his insurer for sums spent in satisfaction of the stipulated judgment. Castlebury, however, was covered only under the American policy and therefore American is primarily liable to discharge his liability. "Enforcement of any obligation for indemnity contained in the hauling contract, . . . would result in a circuity of action." The trial court gave judgment in favor of Transport and denied all relief requested by American.

### Issues on Appeal

Appellant contends: (1) The agreement between Milne and B & D places the sole burden for the liability here involved upon Milne and thus insulates appellant as B & D's insurer from loss; (2) a judgment declaring that American has a right of indemnity against Milne will not result in circuity of action; (3) alternatively, if appellant is deemed to have provided insurance coverage, that coverage should be prorated with that provided by Transport; and (4) the trial court erroneously excluded expert testimony concerning the meaning and purpose of clause 3 of the American policy.

*Indemnity*

The controversy here is primarily between two carriers who have issued contracts of insurance to persons and organizations who have become liable in tort in a fashion ostensibly covered by both policies of insurance. The problem presented for adjudication is the allocation of the loss between those insurers. We adopt, as a correct statement of the law, the approach to that problem utilized by the trial court. The approach requires the following steps: (1) the determination of the person upon whom ultimate liability will be thrust by the legal principles of indemnity; and (2) the determination by analysis of the insurance policies involved of the extent of the coverage afforded by those policies to that person. (*Pacific Indem. Co.* v. *Truck Ins. Exchange,* 269 Cal.App.2d 420 [74 Cal.Rptr. 793] and cases there cited.)

*Ultimate Liability.* Application of the principles of indemnity to the case at bench thrusts ultimate liability upon Castlebury whose negligence caused the wrongful death. ■ Under California law, an employer, who is held derivatively liable for the negligent acts of an employee, has the right to recover from that employee for loss caused by the negligence. (*Continental Cas. Co.* v. *Phoenix Constr. Co.,* 46 Cal.2d 423 [296 P.2d 801, 57 A.L.R. 2d 914]; *United States Fire Ins. Co.* v. *Transport Indem. Co.,* 244 Cal.App. 2d 110 [52 Cal.Rptr. 757]; *Pacific Indem. Co.* v. *Truck Ins. Exchange,* 269 Cal.App.2d 420 [74 Cal.Rptr. 793].) ■ "An insurance carrier compelled . . . to pay the loss . . . may recover the amount which it has paid by a suit against the negligent employees, having the equitable right of subrogation." (*United States Fire Ins. Co.* v. *Transport Indem. Co., supra,* 244 Cal.App.2d at p. 119.) ■ In the instant case, both B & D and Milne had the right to recover from Castlebury, whose negligence caused the collision. Both American and Transport succeeded by virtue of their payments to the heirs of McMinn to rights respectively of B & D and Milne to recover from Castlebury or his insured.

■ *Insurance Coverages of Castlebury.* Castlebury, the involuntary possessor of the ultimate liability for the loss involved in the case at bench, is insured by American but not by Transport. The American policy covers a person using an insured vehicle with permission provided he is not insured "under an automobile liability insurance policy which affords coverage for automobile[s] hired . . ." Castlebury is a person using, with permission, a vehicle insured by American. He is not insured under the automobile liability insurance policy issued by Transport. The Transport policy insures Milne Truck Lines and "any executive officer, director or stockholder thereof while acting within the scope of his duties . . . ." It does not insure

ordinary employees of Milne. Castlebury is in that latter category of persons not covered by the policy.[1]

█ While American also succeeded to the rights of one of its insureds, B & D, to recover from Castlebury, that right is illusory since American itself is Castlebury's only insurer. We conclude that the trial court properly determined that American, as the sole insurer of Castlebury, must bear the loss here involved.

### Lease Agreement

Appellant contends that Milne and B & D by their lease agreement have determined their respective insurance coverage in a manner which is binding upon their insurers and which places liability only on Transport. It bases its contention upon paragraph 13 of the lease which provides that Milne assumes full responsibility to the public for operation of the leased equipment. An agreement between a lessor and lessee of a vehicle pertaining to liability insurance coverage may be a matter of significance. (*Pacific Indem. Co.* v. *Liberty Mut. Ins. Co.,* 269 Cal.App.2d 793 [75 Cal.Rptr. 559].)
█ Where, however, the issue concerns which of two insurers whose policies may cover a particular incident is to bear the loss, we construe that significance as bearing primarily upon the construction of insurance policies with respect to the coverage afforded the possessor of the ultimate liability for the damage. Here both policies of insurance were issued well before the lease between Milne and B & D and without reference to that transaction. The wording of the subsequent lease cannot be said to affect the intent of the parties with respect to the coverage afforded by the earlier policies.

*Pacific Indem. Co.* v. *Liberty Mut. Ins. Co.,* 269 Cal.App.2d 793 [75 Cal. Rptr. 559], upon which appellant relies, is distinguishable from the case at bench. In *Pacific Indemnity,* California Rent Car, insured by Liberty Mutual, leased an automobile to Brown-Massie and Associates. The lease required that Brown-Massie provide liability insurance covering the rented vehicle. Brown-Massie did so by securing an endorsement to its policy from Pacific Indemnity adding California Rent Car as an additional insured. The Liberty Mutual policy excluded automobiles rented to a customer for a year or more. The court treated the Pacific Indemnity policy as having been issued in reference to the lease and construed it as providing primary coverage.

The facts of the case at bench differ significantly from those in *Pacific Indem. Co.* v. *Liberty Mut. Ins. Co., supra.* Nothing in the record of the

---

[1]Since we find Castlebury to be an express insured under American's policy, we need not consider appellant's argument that *Wildman* v. *Government Emp. Ins. Co.,* 48 Cal.2d 31 [307 P.2d 359] is inapplicable to make it an insurer as a matter of law.

case at bench indicates that the policies were issued in contemplation of or in relation to the terms of the lease. The terms of the Transport policy excludes persons in Castlebury's category while the terms of the Pacific Indemnity policy were not drawn to exclude the driver at fault in the accident there involved. The terms of the American policy include persons in Castlebury's category. Those in the Liberty Mutual policy excluded automobiles rented for more than one year. Significantly also, nothing in the Transport policy which is now before us purports to relinquish Transport's right of indemnity from a negligent employee of its insured who is not an additional insured.

■ Appellant argues, also, that respondent by assuming full responsibility to the public for operation of the vehicle, pursuant to paragraph 13 of the lease agreement, waived its normal right of action against Castlebury. We do not so construe paragraph 13. The lease agreement is one between Milne and B & D. It does not purport to affect the rights of or to be for the benefit of third persons. The only fair construction of the pertinent paragraph is that it was intended to and did fix the rights and liabilities of Milne and B & D only. The litigation which is now before us is not between those parties but between insurance carriers. It concerns directly not the rights and liabilities of Milne and B & D under their lease but the liabilities of Transport and American pursuant to the respective contracts of insurance written by them.

### Circuity of Action

■ Appellant presented an alternative theory to the trial court. It contended that if it should be found liable upon its policy of insurance issued to B & D it would become subrogated to the rights of B & D against Milne based upon paragraph 13 of the lease agreement. Appellant argued that hence Milne's obligation to assume full responsibility to the public for operation of the leased equipment would inure to its benefit. The alternative theory was rejected by the trial court on the ground that it would result in a futile circuity of action in which liability would ultimately rest with appellant.

We agree with the reasoning of the trial court. Appellant's alternative theory ignores the reality that if Milne should be liable to it, Milne would have a right of indemnity against Castlebury who, in turn, is insured against any resulting liability by appellant. Appellant argues on appeal, however, that any cause of action against Castlebury is now barred by the statute of limitation so that the chain of circuity is broken. Appellant's argument possesses a fatal flaw. It ignores the proposition that its liability is that as an insurer of Castlebury. Appellant, as subrogee of Castlebury, has no greater rights than its insured who, as the primary tortfeasor, has none. (*United States Fire Ins. Co.* v. *Transport Indem. Co.,* 244 Cal.App.2d 110 [52 Cal.

Rptr. 757]; *Pacific Employers Ins. Co.* v. *Hartford Acc. & Indem. Co.*, 228 F.2d 365.)

Neither is the statute of limitations an obstacle to relief in this case. Transport and American reserved, at the time of the original stipulated judgment, the right to have a court determine their rights and obligations respecting the payments. American may not now claim that Milne was required to immediately sue Castlebury. (*Pacific Employers Ins. Co.* v. *Hartford Acc. & Indem. Co., supra,* 228 F.2d 365.)

## Proration

■ Appellant contends that the damages paid to the heirs of the decedent in the case at bench should be prorated between it and Transport pursuant to the accepted rule that where two policies of insurance, each potentially applicable to a given loss, purport to be excess insurance, the loss must be prorated between them. Our analysis of the policies here involved leads to the conclusion that the rule is not here pertinent. Paragraph 7 of appellant's policy states, "with respect to any automobile of the commercial type while leased or loaned to any person or organization, other than the named insured, engaged in the business of transporting property by automobile for others, . . . the insurance shall be excess over any other valid and collectible insurance." Appellant argues that by reason of that paragraph, its policy is excess insurance only. Appellant claims that the Transport policy is also excess insurance and that therefore the loss should be prorated. Appellant's argument must be rejected because although Milne is insured by Transport for risks involved in operation of the leased equipment, Transport does not insure Castlebury who caused the injury. Hence there is no valid and collectible insurance of the person ultimately liable other than the policy issued by appellant. Under these circumstances, American's excess coverage clause is inapplicable. (*Pacific Employers Ins. Co.* v. *Hartford Acc. & Indem. Co.*, 228 F.2d 365; *United States Fire Ins. Co.* v. *Transport Indem. Co.*, 244 Cal.App.2d 110 [52 Cal.Rptr. 757]; *Industrial Indem. Co.* v. *General Ins. Co.*, 210 Cal.App.2d 352 [26 Cal.Rptr. 568]; *Canadian Indem. Co.* v. *United States Fid. & Guar. Co.*, 213 F.2d 658.)

## Exclusion of Expert Testimony

■ The case at bench was tried primarily upon stipulated facts, Appellant called John Hutton, a retired "special risk manager," as an expert witness. Appellant offered to prove the following with respect to clause 3 of its policy: (1) There has been a constant effort on the part of insurers of carriers involved in hauling cargo to shift liabilities and losses from lessors to lessees and vice-versa; (2) the purpose of clause 3 was to exclude from the lessor's

policy the lessee and its insurer where the lessee was operating the lessor's equipment; and (3) the purpose of paragraph 7 was to make the lessor's insurance excess over valid and collectible insurance available to the lessee. Appellant conceded that it was not the purpose to exclude "any employee of the named insured . . . such as Mr. Castlebury." The trial court sustained an objection to the proffered testimony.

We conclude that the trial court was correct in sustaining the objection. When appellant conceded that it was not the purpose of the pertinent language of its policy to exclude from its coverage employees such as Castlebury, the proffered testimony was irrelevant. It was Castlebury's ultimate liability and his coverage that were at issue before the trial court.

Moreover, appellant conceded that while it was offering the expert testimony to in effect vary the terms of written policies of insurance, the documents were not ambiguous. ▮▮▮ While under some circumstances parol testimony is admissible to establish the meaning attached by the parties to an apparently unambiguous instrument (*Pacific Gas & Elec. Co.* v. *G. W. Thomas Drayage etc. Co.,* 69 Cal.2d 33 [69 Cal.Rptr. 561, 442 P.2d 641], the excluded testimony was not offered for that purpose. It was tendered as the opinion of an expert as to what he thought the parties intended. As such, it was properly excluded.

### Conclusion

We find no error in the proceedings in the trial court. The judgment is affirmed.

Wood, P. J., and Lillie, J., concurred.